IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| MICHAEL PITTS, on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>  v.<br><br>VOLKSWAGEN GROUP OF AMERICA, INC., a New Jersey Corporation, and AUDI AG,<br><br>     Defendant. | No.   1:20-cv-768<br><br><br>**<u>JURY TRIAL DEMANDED</u>** |

**CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ....................................................................................................1

II.  PARTIES ................................................................................................................4

    A.   Plaintiff .......................................................................................................4

        1.   Plaintiff Michael Pitts ....................................................................4

    B.   Defendants ..................................................................................................7

III. JURISDICTION .....................................................................................................8

IV.  VENUE ..................................................................................................................8

V.   FACTUAL ALLEGATIONS .................................................................................9

    A.   Audi's History of Defective Start/Stop Systems ......................................9

    B.   Audi Has Not Remedied the Start/Stop Defect in Affected Vehicles ....10

    C.   NHTSA Complaints Reveal the Start/Stop Defect Poses Serious Safety Risks ....11

    D.   Audi Sells, Markets and Advertises Audi Vehicles As Technologically Advanced, Dependable and Safe ....31

    E.   Plaintiff and Class Members Would Not Have Purchased or Leased, or Would Have Paid Less for Affected Vehicles Had They Known of the Start/Stop Defect ....33

    F.   Audi Has Manipulated Its Warranty To Minimize Its Obligation To Fix the Start/Stop Defect In Affected Vehicles ....34

    G.   Allegations Establishing Agency Relationship Between Manufacturer Audi and Audi Dealerships ....35

VI.  TOLLING OF THE STATUTE OF LIMITATIONS ............................................38

    A.   Discovery Rule Tolling .............................................................................38

    B.   Fraudulent Concealment Tolling ..............................................................39

    C.   Estoppel ....................................................................................................39

VII. CLASS ALLEGATIONS ......................................................................................39

VIII.   CLAIMS BROUGHT ON BEHALF OF THE NATIONWIDE CLASS..........................43

COUNT I VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.* THE MAGNUSON-MOSS
WARRANTY ACT .................................................................................................43

COUNT II FRAUDULENT CONCEALMENT  (BASED ON COMMON LAW)....................45

COUNT III VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT (VA.
CODE ANN. §§ 59.1-196, ET SEQ.)................................................................48

IX.   CLAIMS BROUGHT ON BEHALF OF THE STATE SUBCLASS ..............................50

COUNT IV BREACH OF CONTRACT (COMMON LAW) ......................................................50

COUNT V BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER
STATE COMMERCIAL CODES.......................................................................51

COUNT VI  BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING ..............53

COUNT VII VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE
PRACTICES ACT (FLA. STAT. §§ 501.201, *ET SEQ.*)..................................54

REQUEST FOR RELIEF ...........................................................................................................57

DEMAND FOR JURY TRIAL ..................................................................................................58

Plaintiff Michael Pitts, on behalf of himself and all others similarly situated (the "Class"), alleges the following based upon the investigation of counsel and information and belief as noted.

## I.      INTRODUCTION

1.      With consumers worldwide demanding cleaner and more efficient vehicles to curb carbon emissions and slow global warming, vehicle manufacturers have responded by introducing electric and hybrid drive vehicles, and for those cars which remain powered by gasoline, manufacturers have installed Automatic Start/Stop systems ("Start/Stop") to curtail otherwise unnecessary emissions that occur while the vehicle is stopped in traffic, parked, or otherwise not moving. While curtailing emissions from otherwise idling vehicles is a necessary and important function of a modern automobile, it cannot come at the cost of reliable operation of the basic safety systems in a car, namely the brakes, steering and acceleration. The Start/Stop system in a vehicle must not shut off the engine too soon, so as to disengage power steering and power brakes before the vehicle has come to a stop, and it must restart the engine immediately when the vehicle begins moving so that power brakes, power steering and acceleration are available. Audi has sold and marketed the Affected Vehicles defined below with defective Start/Stop systems that cause loss of braking and steering power before a vehicle has come to a complete stop and delayed steering, braking and acceleration when the driver attempts to resume motion (the "Start/Stop Defect"). The Start/Stop Defect renders the Affected Vehicles unsafe to operate because the critical braking, steering and accelerating functions of the Affected Vehicles shut off too soon and restart too late.

2.      This lawsuit arises because Audi AG and its U.S. distributor, Volkswagen Group of America, Inc. (collectively, "Audi"), knew that the Start/Stop systems in the vehicles

identified as "Affected Vehicles" below contained a defect that causes engine shutdown too early when slowing, and too late when restarting. Yet Audi refuses to repair or replace such defective systems and continues to sell—and require its customers to drive—its vehicles with the defective Start/Stop system—which could result in injuries or even deaths that could otherwise be avoided.

3. Affected Vehicles include all 2017-2020 Audi models that are equipped with Start/Stop systems, other than hybrid vehicles. Audi has received numerous complaints from customers and has issued and subsequently revised a Technical Service Bulletin ("TSB") concerning the defective Start/Stop system.[1] The most recent version of the TSB identifies customer concerns as: (1) "The Start/Stop system does not shutdown when the driver thinks it should"; (2) "The Engine is not automatically switched off or on"; and (3) "The engine restarts from a start/stop for reasons unknown to the driver." As of November 21, 2018, the TSB specifically covers the following Audi models for model years 2017-2019: A3, A4, A5, A6, A7, A8, S3, S4, S5, S6, S8, TT, TT S, Q5, Q7, Q8, SQ5. On information and belief, including from reviewing owner complaints to NHTSA, and owner complaints that the undersigned counsel has directly received, the Start/Stop system for the 2020 model year remains defective.

4. Affected Vehicles include:

- 2017-2020 A3
- 2017-2020 A4
- 2017-2020 A5
- 2017-2020 A6
- 2017-2020 A7

---

[1] A true and correct copy of the November 21, 2018 TSB is attached as Exhibit A to this Complaint. It identifies the revision history as having its initial publication on April 28, 2017. On August 16, 2017, the TSB was updated to include 2018 model year vehicles and it was updated again on November 21, 2018 to include 2019 model year vehicles.

- 2017-2020 A8
- 2017-2020 S3
- 2017-2020 S4
- 2017-2020 S6
- 2017-2020 S8
- 2017-2020 TT
- 2017-2020 TT S
- 2017-2020 Q5
- 2017-2020 Q7
- 2017-2020 Q8
- 2017-2020 SQ5

If further investigation reveals that additional Audi vehicles contain the same defective Stop/Start system, the models identified as Affected Vehicles may be amended.

5.     The November 21, 2018 TSB provides no solution to customer complaints. In the TSB, Audi attempts to explain away customer concerns: "The Start/Stop system is complex and the number of the conditions affecting it is high. In many cases concerns about the Start/Stop system may actually be normal operation or influenced by the actions of the driver or passenger."

6.     The Start/Stop Defect endangers drivers, passengers, and other persons and property in the vicinity of an Affected Vehicle at any time that the Affected Vehicle is slowing to a stop or starting from a stop. The Start/Stop Defect thus renders the Affected Vehicles less safe and less valuable than consumers would reasonable expect and it makes them less safe and less valuable than the Affected Vehicles would be if Audi did not design and sell the Affected Vehicles with the Start/Stop Defect.

7.     Plaintiff accordingly brings this class action complaint to recover on behalf of the Class all relief to which they are entitled, including but not limited to the recovery of the

purchase price of their vehicles, compensation for overpayment and diminution in value of their vehicles, out-of-pocket and incidental expenses, and an injunction compelling Audi to replace, or recall and fix, the Affected Vehicles.

## II.   PARTIES

### A.   Plaintiff

8.   Plaintiff and each and every Class member has suffered an ascertainable loss as a result of Audi's omissions and/or misrepresentations associated with the Affected Vehicles, including but not limited to out-of-pocket loss and diminished value of the Affected Vehicles.

9.   None of the Defendants, nor any of their agents, dealers, or other representatives informed Plaintiff or Class members of the Start/Stop Defect in the Affected Vehicles prior to purchase.

10.   Plaintiff received information about the characteristics, benefits, safety, dependability, and quality of the Affected Vehicles at the dealership and/or through Audi's extensive advertising concerning dependability, quality and safety, as intended by Audi.  None of the information Plaintiff received disclosed the Start/Stop Defect prior to the vehicle's purchase.

### 1.   Plaintiff Michael Pitts

11.   Plaintiff Michael Pitts is a resident of Inverness, Florida, domiciled in the Middle District of Florida. On or about March 9, 2019, Plaintiff purchased a 2018 Audi A6 (for the purpose of this section, the "Affected Vehicle") from Audi of Wilsonville in Wilsonville, Oregon, for personal use. Plaintiff purchased and still owns the Affected Vehicle, which as of the date of this filing has approximately 19,000 miles on it.  He purchased the vehicle for approximately $54,000.

12.     Unknown to Plaintiff at the time the Affected Vehicle was purchased, it was equipped with a Start/Stop system that was defective and did not function safely, as advertised, or as intended by its design. Audi's unfair, unlawful, and deceptive conduct in designing, manufacturing, marketing, selling, and leasing the Affected Vehicle with the Start/Stop Defect has caused Plaintiff out-of-pocket loss, future attempted repairs, and diminished value of the Affected Vehicle.

13.     Plaintiff uses the Affected Vehicle for personal and family uses. Prior to purchasing the Affected Vehicle, Plaintiff reviewed the Monroney Label Audi placed on the window. The window sticker advertised the Affected Vehicle's various features (such as the price, specifications, gas mileage, equipment and warranty details, and crash test ratings) and Plaintiff relied on the advertisements contained within the window sticker when deciding to purchase the Affected Vehicle. The Monroney sticker did not disclose that the Affected Vehicle possessed any defects.

14.     Under otherwise normal operating conditions, the engine in Plaintiff's Affected Vehicle shuts down before the vehicle comes to a complete stop. This causes the power steering to become extremely difficult to use. At the same time, the brake pedal also becomes heavy and the brakes to not operate in the same manner as when the engine is running. When restarting from a stop, Plaintiff's Affected Vehicle lurches forward and the power steering does not immediately engage, making it difficult to steer the car. In addition, the car will not accelerate as expected initially, but then blasts forward.

15.     The Start/Stop Defect nearly caused Plaintiff to have an accident.  On or about June 30, 2020, Plaintiff was travelling eastbound on West Main Street in Inverness, Florida. As he approached the intersection with Montgomery Avenue where he had a green light, Plaintiff

slowed to let oncoming traffic pass so he could make a left turn on Montgomery Avenue southbound. While still travelling at approximately 2 MPH, the engine turned off and Plaintiff lost his power steering and power brakes, which caused him to coast into the intersection and toward oncoming traffic. Plaintiff was fearful his vehicle would be hit by oncoming traffic and he credits luck that he was not struck and seriously injured during the 2-3 seconds that he had essentially no control of his vehicle.

16.     Plaintiff is an avid driver and enjoys road trips, but – because of the Stop/Start Defect and the concern about how the vehicle operates in traffic– he is reluctant to travel in his vehicle.

17.     In March 2020, Plaintiff took his Affected Vehicle to Audi of Gainesville in Gainesville, Florida. Plaintiff told the service department about the issues he was having with the Start/Stop system, as described above. The service department told Plaintiff not to worry about it, the car "was learning your driving pattern" and it was operating normally. The service department did not inform Plaintiff of any defect in the Start/Stop system and would not undertake any repairs to the Start/Stop system.

18.     At the time that he was researching and purchasing his Affected Vehicle, Audi never told Plaintiff about the Start/Stop Defect, so Plaintiff purchased his Affected Vehicle on the reasonable, but mistaken, belief that his Affected Vehicle would be reliable, dependable and safe and would retain all of its operating characteristics throughout its useful life. Plaintiff specifically shopped for an Audi vehicle because he believed Audi's persistent advertising messaging that its vehicles were of high quality, were safe, and were dependable. None of the advertisements reviewed or representations received by Plaintiff contained any disclosure that the Affected Vehicle had a defect or the fact that Audi would be unable or unwilling to repair the

defect. Had Audi disclosed the Start/Stop Defect, Plaintiff would have received these disclosures, and he would not have purchased the Affected Vehicle or would have paid less for it.

**B.     Defendants**

19.     Defendant Volkswagen Group of America, Inc. ("VWGA") is incorporated in New Jersey and headquartered in Herndon, Virginia. VWGA is Audi's U.S. sales and marketing arm, which oversees sales and other operations throughout the United States. VWGA has an "operating unit" that it calls Audi of America, Inc. However, VWGA is the legal entity that distributes Audi vehicles and sells these vehicles through its network of Audi-branded dealerships. Money received from the purchase of an Audi vehicle from an Audi dealer flows from the dealer to VWGA.

20.     Defendant Audi AG is the German based company that designs, manufactures, promotes, markets, and distributes Audi Vehicles worldwide, including Affected Vehicles. Audi AG's headquarters are at Auto-Union-Str. 2 D85045, Ingolstadt, Germany. Through its subsidiaries and agents, Audi AG, designs, manufactures, promotes, markets, and distributes Affected Vehicles, in a continuous manner throughout the United States.

21.     VWGA and Audi AG sell Audi vehicles through a network of dealers who are the agents of VWGA and Audi AG.

22.     VWGA and Audi AG are collectively referred to in this complaint as "Audi" unless identified as VWGA or Audi AG.

23.     Audi manufactured, sold, and warranted the Affected Vehicles throughout the United States. Audi AG and/or its agents, divisions, or subsidiaries designed, manufactured, and installed the defective Start/Stop system in the Affected Vehicles

### III.   JURISDICTION

24.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because at least one class member is of diverse citizenship from one Defendant, there are more than 100 class members nationwide, and the aggregate amount in controversy exceeds $5,000,000 and minimal diversity exists. This Court also has supplemental jurisdiction over the state law claims because those claims are integrally related to the federal claims and form part of the same case and controversy under 28 U.S.C. § 1367.

25.     This Court has personal jurisdiction over Audi AG by virtue of its transacting and doing business in this District. Audi AG has purposefully availed itself of the benefits and protections of the Eastern District of Virginia by continuously and systematically conducting substantial business in this judicial district. Audi AG has intentionally and purposefully sold, supplied, and distributed Affected Vehicles into the stream of commerce within Virginia and throughout the United States.

26.     This Court has personal jurisdiction over VWGA, Inc. by virtue of its transacting and doing business in this District.

### IV.   VENUE

27.     Venue is proper pursuant to 28 U.S.C. § 1391(a) & (b) because a substantial part of the events or omissions giving rise to the claims occurred in this District. Audi licenses authorized dealers in this District, it advertises in this District, and it profits from its activities conducted within this District.

## V.    FACTUAL ALLEGATIONS

### A.    Audi's History of Defective Start/Stop Systems

28.    Audi owners have been complaining of issues in the Audi Stop/Start system for many years.  In July 2017, a class action lawsuit was filed against Audi AG and VWGA, alleging that the Start/Stop system improperly prevented restart of the engine if the driver happened to unbuckle his/her seatbelt while at a stop.[2] When the driver lifted his/her foot off the brake, the car would not restart and would instead roll forward with no power steering and no brake booster and the driver would not be able to restart the car until he or she had fully stopped it, placed it in park, and then hit the push-to-start button.[3]

29.    Shortly after an amended complaint was filed in the *Makaryan* lawsuit, it was dismissed. There is no indication in the record that Audi ever took any steps to remedy the seatbelt cut-out in the Start/Stop system, there was no recall, and Audi never alerted its customers to the potential hazard of unbuckling the seatbelt while at a stop sign, or in a drive-through, or otherwise while the car was in gear (i.e., not in Park).

30.    Online complaints about the operation of the Start/Stop system in Affected Vehicles began before the *Markaryan* lawsuit was filed, and continued thereafter, with owners also complaining directly to their Audi service departments. On April 28, 2017, Audi issued a Technical Service Bulletin ("TSB"), alerting its dealers to the complexity of the Start/Stop system and that customers may have complaints about how the system operates. The TSB was likely in response to customer complaints at dealerships and on Audi-related electronic forums,

---

[2] *See Makaryan v. Volkswagen Group of America, Inc. et al.*, No. 2:17-cv-5086, Dkt. No. 1 (C.D. Cal. filed July 11, 2017).

[3] *See id.*

such as "Audiworld." As early as November 17, 2016, Audi owners reported error messages concerning Start/Stop system malfunctions and their dealers' inability to correct/address the problems.[4]

**B.     Audi Has Not Remedied the Start/Stop Defect in Affected Vehicles**

31.     The Start/Stop Defect in the Affected Vehicles is dangerous to drivers, vehicle occupants and innocent bystanders. A vehicle that has its power steering and brake assist inoperative while the vehicle is coming to a stop or initiating movement from a stop, and fails to accelerate when demanded, is simply unsafe to operate.

32.     Audi has not fixed the Affected Vehicles, despite its realization and admission in the TSB that there are legion customer complaints concerning its operation. Owners of Affected Vehicles can only guess whether there will be a repair or replacement to address the Start/Stop Defect, and, if so, when.

33.     Rather than spend the money necessary to address the defect, or at least warn its customers that they have cars equipped with defective Start/Stop systems, Audi has shifted the significant and serious risk of inoperable vehicles, accidents and injury onto its customers.

34.     Audi has not recommended or advised that consumers stop driving Affected Vehicles pending repair or replacement of the Start/Stop system. Audi is unwilling to spend the money necessary to provide alternative transportation to its customers. Instead, it makes them chose between driving a car with a dangerous defect, or driving nothing at all. On information and belief, tens of thousands of owners of Affected Vehicles have no idea that the Start/Stop

---

[4] *See, e.g.,* https://www.audiworld.com/forums/a4-b9-platform-discussion-212/automatic-start-stop-function-malfunction-2909635/

systems in their supposedly technologically advanced, dependable, and safe Audi vehicles have a

known safety defect.

**C.      NHTSA Complaints Reveal the Start/Stop Defect Poses Serious Safety Risks**

35.      Affected Vehicle owner complaints to NHTSA describe harrowing traffic events

and near misses, making perfectly clear that this is not a defect that Audi can continue to ignore.

36.      On July 12, 2017, the owner of a 2017 Audi A3 filed the following complaint

with NHTSA:

> July 12, 2017 NHTSA ID NUMBER: 11004966
> Components: SERVICE BRAKES, ENGINE, UNKNOWN OR
> OTHER
> NHTSA ID Number: 11004966
> Incident Date June 1, 2017
> Consumer Location ATLANTA, GA
> Vehicle Identification Number WAUGUGFF0H1****
> Summary of Complaint
>
> ENGINE SHUTS OFF WHEN CAR IS IN DRIVE OR REVERSE
> WHILE VEHICLE IS IN MOTION AND DISPLAYS MESSAGE
> OF "START/STOP SYSTEM DEACTIVATED. PLEASE
> RESTART ENGINE MANUALLY. THE YELLOW CHECK
> ENGINE LIGHT THEN APPEARS. AND THE VEHICLE
> ROLLS AWAY UNLESS BRAKES ARE APPLIED. THIS
> HAPPENED MULTIPLE TIMES - 10 TIMES IN MY CAR, 3 IN
> MY FIRST LOANER CAR AND 6 IN MY SECOND LOANER
> CAR. THE VEHICLE IS USUALLY IN MOTION RIGHT
> AFTER THE ENGINE IS STARTED AND THE CAR IS
> DRIVEN FOR ABOUT 500 FEET, AFTER THE CAR IS GOING
> 3-5 MPH THE ENGINE SHUTS OFF AND THE CAR WILL
> ROLL AWAY. ON OTHER OCCASIONS WHEN THE CAR IS
> STOPPED IN TRAFFIC THE ENGINE SHUTS OFF AND WILL
> ROLL AWAY. EACH TIME YOU MUST PUT THE VEHICLE
> IN PARK AND RESTART THE ENGINE. ON ANOTHER
> OCCASION A PRE SENSE MALFUNCTION OCCURRED
> WHERE THE CAR SLAMMED ON ITS BRAKES IN TRAFFIC
> AND ALMOST CAUSED A REAR END COLLISION. THE
> DEALERSHIPS HAVE NO ANSWERS FOR THE FIRST PART,
> BUT CLAIM A BUG ON THE SENSORS CAUSED THE CAR
> TO SLAM ON ITS BRAKES.

37.     On August 10, 2017, the owner of a 2017 Audi A7 filed the following complaint

with NHTSA:

>       August 10, 2017 NHTSA ID NUMBER: 11014169
>       Components: SERVICE BRAKES, ENGINE,
>       FUEL/PROPULSION SYSTEM
>       NHTSA ID Number: 11014169
>       Incident Date August 8, 2017
>       Consumer Location BETHESDA, MD
>       Vehicle Identification Number WAU22AFC6HN****
>       Summary of Complaint
>
>       THE AUTOMATIC START/STOP FUEL-SAVING ENGINE
>       FEATURE ENGAGES PREMATURELY, BEFORE THE
>       VEHICLE HAS COME TO A COMPLETE STOP. AS A
>       RESULT, THE VEHICLE FEELS LIKE THE BRAKES HAVE
>       BEEN ARTIFICIALLY AND AGGRESSIVELY APPLIED TO
>       BRING THE CAR TO A COMPLETE STOP BEFORE THE
>       START/STOP ENGINE FEATURE OTHERWISE SHOULD
>       HAVE ENGAGED. AS A RESULT, FOR VEHICLES
>       FOLLOWING CLOSE BEHIND, THE EFFECT WILL BE THAT
>       THE AUDI VEHICLE IN FRONT OF THEM WILL APPEAR
>       TO LURCH TO A STOP, THUS CREATING A RISK OF A
>       REAR-END COLLISION. THIS ISSUE HAPPENS EACH AND
>       EVERY TIME THE START/STOP FEATURE IS ACTIVE, AND
>       TYPICALLY INVOLVES ARTIFICIAL AND PREMATURE
>       BRAKING/STOPPING AT LOW SPEEDS AS THE VEHICLE IS
>       APPROACHING WHAT WOULD OTHERWISE BE ITS
>       NATURAL STOPPING POINT BASED ON THE DRIVER-
>       APPLIED PRESSURE TO THE BRAKE PEDAL.

38.     On June 12, 2019, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

>       June 12, 2019 NHTSA ID NUMBER: 11219427
>       Components: ENGINE, POWER TRAIN, VEHICLE SPEED
>       CONTROL
>       NHTSA ID Number: 11219427
>       Incident Date June 12, 2019
>       Consumer Location PARK CITY, UT
>       Vehicle Identification Number WA1FVAF1XKD****
>       Summary of Complaint
>
>       EXCESSIVE AND DANGEROUS DELAY IN THROTTLE
>       RESPONSE DUE TO AUTO START/STOP SYSTEM CAUSING

- 12 -

VEHICLE TO COAST WHEN SLOWING DOWN AT A YIELD
SIGN OR INTERSECTION ETC BEFORE TRANSMISSION
RE-ENGAGES. THE VEHICLE IS POWERLESS FOR
SEVERAL SECONDS DESPITE APPLICATION OF GAS
PEDAL, CAUSING ONCOMING TRAFFIC TO POTENTIAL
COLLIDE WITH "STALLED" Q8. THIS IS A MAJOR DESIGN
DEFECT IN THE AUTO START/STOP SYSTEM AND
OCCURS EVERY TIME THE SYSTEM IS ACTIVE.

39.    On June 12, 2019, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

June 12, 2019 NHTSA ID NUMBER: 11219407
Components: VEHICLE SPEED CONTROL
NHTSA ID Number: 11219407
Incident Date June 11, 2019
Consumer Location SAINT HELENA ISLAND, SC
Vehicle Identification Number WA1FVAF14KD****
Summary of Complaint

START/STOP SYSTEM HAS NEARLY CAUSED TWO
MAJOR ACCIDENTS FOR ME. TURNING LEFT AT AN
INTERSECTION WITH APPROACHING TRAFFIC AND
PLENTY OF TIME UNDER NORMAL CIRCUMSTANCES TO
PROCEED......PUSH ACCELERATOR AND 2 TO 3 SECOND
HESITATION (TURBO LAG). CAR DOES NOT MOVE.
THERE IS NO WAY TO PERMANENTLY DISABLE THIS
DEFECTIVE SYSTEM IN THE AUDI Q8.

40.    On June 26, 2019, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

June 26, 2019 NHTSA ID NUMBER: 11222824
Components: POWER TRAIN
NHTSA ID Number: 11222824
Incident Date June 26, 2019
Consumer Location WASHINGTON, DC
Vehicle Identification Number WA1CVAF13KD****
Summary of Complaint

MY GORGEOUS NEW AUDI Q8 HAS A DANGEROUS
HESITATION ISSUE WHEN ACCELERATION FROM A FULL
START WITH AUTO START/STOP ENABLED. THE ISSUE IS
DESCRIBED THOROUGHLY IN THE ARTICLE @
HTTPS://TECHCRUNCH.COM/2019/06/10/REVIEW-THE-

STUNNING-2019-AUDI-Q8-HAS-A-DEAL-BREAKING-
FLAW/. ACCELERATOR RESPONSE IS VERY
INCONSISTENT SUCH THAT YOU CAN'T COUNT ON THE
CAR ACCELERATING IN A CONSISTENT MANNER. IT
EITHER HESITATES OR SURGES FORWARD. TURNING
AUTO START/STOP DOES IMPROVE PERFORMANCE, BUT
ONE MUST REMEMBER TO TURN IT OFF EVERY TIME
YOU START THE VEHICLE. I GOT MY Q8 2 MONTHS AGO.
I TRIED TO LEARN HOW TO PREDICT ACCELERATION
FROM A STANDSTILL, BUT GAVE UP AFTER ALMOST
GETTING INTO AN ACCIDENT WHILE CHANGING LANES
AROUND A CAR AT A RED LIGHT. I TOOK IT TO THE
DEALER WHO SAYS AUDI HAS NOT ISSUED ANY
SERVICE BULLETINS TO RESOLVE THIS ISSUE AND THE
PROBLEM WAS NOT HAPPENING AT THE TIME OF THIS
TEST DRIVE.

41.     On August 28, 2019, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

August 28, 2019 NHTSA ID NUMBER: 11251899
Components: ENGINE, POWER TRAIN, VEHICLE SPEED
CONTROL
NHTSA ID Number: 11251899
Incident Date May 23, 2019
Consumer Location EVANSTON, IL
Vehicle Identification Number WA1EVAF15KD****
Summary of Complaint

THERE IS A NOTICEABLE THROTTLE LAG (HESITATION)
WHEN THE AUTO START/STOP FEATURE IS ENABLED,
AND THE CAR COMES OUT OF A ROLLING STOP (EX.
WHEN MAKING A LEFT TURN). DISABLING THE AUTO
START/STOP FEATURE OR SELECTING SPORT MODE
NEGATES THE ISSUE.

42.     On September 2, 2019, the owner of a 2019 Audi Q8 filed the following

complaint with NHTSA:

September 2, 2019 NHTSA ID NUMBER: 11252778
Components: POWER TRAIN
NHTSA ID Number: 11252778
Incident Date September 2, 2019
Consumer Location NOBLESVILLE, IN

- 14 -

Vehicle Identification Number WA1FVAF12KD****
Summary of Complaint

DANGEROUS LAG/PAUSE IN THROTTLE RESPONSE
WHEN ACCELERATION IS NEEDED. WHEN COMING TO A
ROLLING OR ALMOST COMPLETE STOP, THE AUTO
START/STOP SYSTEM IS ENABLED. IF I GO TO
TURN/ACCELERATE THERE CAN BE SEVERAL SECONDS
OF TIME LAG BETWEEN PRESSING ON THE
ACCELERATOR AND ANY THROTTLE RESPONSE. IT IS
DANGEROUS AT TIMES WHEN PULLING ONTO A STREET
AND THE CAR WILL NOT RESPOND AFTER A FEW
SECONDS. ADDITIONAL THROTTLE PRESSURE DOES
NOT INDUCE A THROTTLE RESPONSE, AND SUDDENLY
THE CAR WILL SURGE AHEAD. THIS IS NOT AN
ISOLATED INCIDENT AND AND SEEMS RELATED TO
TRANSMISSION PROGRAMMING WHEN THE AUTO
STOP/START SYSTEM IS ENGAGED, WHICH IT IS BY
DEFAULT. THE DEALER SAYS THE CAR IS WORKING AS
DESIGNED. THIS IS DANGEROUS WHEN MAKING CROSS-
TRAFFIC LEFT TURNS BECAUSE OF THE
UNPREDICTABLE DELAY.

THE DATE NOTED BELOW IS JUST TODAY'S DATE, SINCE
THIS SITUATION MAY (AND DOES) OCCUR)ANYTIME
UNDER THE SPECIFIED CIRCUMSTANCES/CONDITIONS.

43.    On October 3, 2019, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

October 3, 2019 NHTSA ID NUMBER: 11266013
Components: POWER TRAIN
NHTSA ID Number: 11266013
Incident Date October 3, 2019
Consumer Location REDMOND, WA
Vehicle Identification Number WA1FVAF11KD****
Summary of Complaint

THERE IS A HUGE (SEVERAL SECONDS) AND
DANGEROUS LAG WHEN THE CAR SLOWS DOWN TO THE
POINT THE START/STOP SYSTEM KICKS IN (AND STOPS
THE ENGINE) AND ACCELERATION IS IMMEDIATELY
NEEDED (E.G. THE CARD DOES NOT COME TO A
COMPLETE STOP.) IN THAT SITUATION, PRESSING THE
ACCELERATOR WILL RESULT IN THE ENGINE STARTING
AGAIN IMMEDIATELY (AS IT IS SUPPOSED TO) BUT THE

- 15 -

CARD WILL NOT ACCELERATE AT ALL NO EFFECT FOR
UP TO 3 SECONDS AND THEN IT WILL SUDDENLY START
MOVING TOO FAST WITH A JOLT (DEPENDING ON HOW
HARD YOU WERE PRESSING THE ACCELERATOR) THIS
SITUATION HAPPENS VERY FREQUENTLY (DAILY FOR
ME), INCLUDING IN THE CONTEXT OF LEFT TURNS
WHERE CARS ARE COMING IN THE OPPOSITE
DIRECTION, MAKING IT A SEVERE SECURITY ISSUE.
THIS PROBLEM IS NOT CAUSED BY TURBO LAG. IT IS
MOST LIKELY CAUSED BY THE SOFTWARE FAILING TO
DOWNSHIFT BECAUSE IT BELIEVES THE CAR IS
COASTING. THIS ISSUE IS NOT ISOLATED AND HAS BEEN
REPORTED BY PLENTY OF OTHER AUDI Q8 USERS.
THERE IS A LONG THREAD ONLINE DISCUSSING IT:
HTTPS://WWW.AUDIWORLD.COM/FORUMS/AUDI-Q8-
227/INTRO-AUTO-START-MAJOR-THROTTLE-LAG-ISSUE-
2966888/PAGE2/

44.    On October 15, 2019, the owner of a 2019 Audi A6 filed the following complaint

with NHTSA:

October 15, 2019 NHTSA ID NUMBER: 11268751
Components: ENGINE
NHTSA ID Number: 11268751
Incident Date September 13, 2019
Consumer Location SEATTLE, WA
Vehicle Identification Number WAUE8AF28KN****
Summary of Complaint

I PURCHASED ANEW AUDI A6 ON SEP 11, 2019. IN THE
FIRST 2 WEEKS, FIVE DIFFERENT TIMES, THE "START
STOP SYSTEM" FAILED TO WORK PROPERLY. I WOULD
BE STOPPED AND WHEN I TRIED TO START AGAIN THE
ENGINE WOULD DIE. IN ORDER TO START THE CAR
BACK UP, I HAD TO PUT THE CAR IN PARK AND
RESTART USING THE START BUTTON. THIS RESULTED
IN AN UNSAFE CONDITION. THE FIRST TIME, I WAS ON A
STEEP INCLINE AND THE CAR STARTED TO ROLL
BACKWARDS. ANOTHER TIME A FIRE TRUCK WAS
TRYING TO GET THROUGH ON A TWO LANE ROAD AND I
COULD NOT GET THE CAR STARTED BACK UP TO PULL
FURTHER OVER ON THE ROAD. THE CAR HAS BEEN TO
SERVICE TWICE. THEY COULD NOT FIND THE PROBLEM.
THE SERVICE DEPARTMENT KEPT AND DROVE THE CAR
BUT THIS START STOP ISSUE DID NOT OCCUR AGAIN. I
HAVE BEEN DRIVING THE CAR SOME FOR THE LAST

TWO WEEKS AND HAVE NOT HAD THIS PROBLEM
OCCUR AGAIN.

45.    On November 3, 2019, the owner of a 2020 Audi Q3 filed the following

complaint with NHTSA:

November 3, 2019 NHTSA ID NUMBER: 11277932
Components: ELECTRICAL SYSTEM, STEERING
NHTSA ID Number: 11277932
Incident Date November 2, 2019
Consumer Location DALLAS, TX
Vehicle Identification Number WA1AECF39L1****
Summary of Complaint

WHEN THE AUTO START-STOP FUNCTION ACTIVATES
(TURNING THE ENGINE OFF), THE STEERING WHEEL
LOCKS. THE CAR CAN CONTINUE TO ROLL WHEN YOU
LET YOUR FOOT OFF THE BRAKE TO START MOVING
AGAIN, BUT THE STEERING WHEEL REMAINS LOCKED
NOT ALLOWING YOU TO STEER THE CAR WHEN
NECESSARY. I ALMOST GOT HIT BECAUSE OF THIS AND
IT IS VERY SCARY NOT TO BE ABLE TO STEER OUT OF
THE WAY WHEN NECESSARY!!! THIS IS HORRIBLE
FUNCTION OF THE CAR WHICH CAN CAUSE A LOT OF
ACCIDENTS!!

46.    On December 3, 2019, the owner of a 2020 Audi Q3 filed the following complaint

with NHTSA:

December 3, 2019 NHTSA ID NUMBER: 11286753
Components: FUEL/PROPULSION SYSTEM, STEERING
NHTSA ID Number: 11286753
Incident Date November 2, 2019
Consumer Location VANCOUVER, WA
Vehicle Identification Number WA1BECF35L1****
Summary of Complaint

VEHICLE MISFIRES/ STUTTERS RESULTING IN THE
VEHICLE SHUTTING OFF. DRIVER HAS TO MANUALLY
RESTART CAR. THIS CAN BE HAZARDOUS WHEN
DRIVING IN TRAFFIC AS THE VEHICLE WILL SHUT OFF.
NOT SURE IF THIS IS A FUEL INJECTION ISSUE. I'VE HAD
THIS HAPPEN TWICE WHILE ASCENDING A HILL. I
PICKED UP MY NEW CAR ON 10/22/2019, SINCE 11/02/2019,
I'VE EXPERIENCED THIS ISSUE 5 TIMES. MY VEHICLE

- 17 -

HAS BEEN IN THE REPAIR SHOP TWICE FOR THIS ISSUE
AND CONTINUOUSLY SINCE 11/25/2019. THE CAR IS NOT
STORING ANY FAULTS.

VEHICLE ALSO RECOGNIZES ROAD REPAIR SEALANT AS
A TRAFFIC LANE AND WILL TAKE CONTROL OF THE
STEERING. YOU HAVE TO WRESTLE WITH THE
STEERING WHEEL TO COMMAND CONTROL OF THE
STEERING.

LASTLY, WHEN USING THESE AUTO START/STOP
FUNCTION, AFTER RELEASING THE BRAKE THE
STEERING LOCKS AND YOU HAVE TO WRESTLE FOR
CONTROL OF THE WHEEL.

47.     On January 22, 2020, the owner of a 2019 Audi Q7 filed the following complaint

with NHTSA:

January 22, 2020 NHTSA ID NUMBER: 11301185
Components: POWER TRAIN
NHTSA ID Number: 11301185
Incident Date January 21, 2020
Consumer Location SAN MARCOS, TX
Vehicle Identification Number WA1LAAF70KD****
Summary of Complaint

MY AUDIO Q7 HAD THROTTLE DELAY ISSUES SOON
AFTER PURCHASE. THE SERVICE DEPARTMENT AT THE
DEALER TOLD ME ALL TESTS WERE NORMAL AND
RETURNED THE CAR. PROBLEMS CONTINUED,
ESPECIALLY AT LOW SPEEDS. THERE IS TYPICALLY A
DELAY OF ABOUT 3 SECONDS BEFORE THE CAR
RESPONDS AND WHEN IT DOES I HAVE THE PEDAL TO
THE FLOOR AND THE CAR LUNGES FORWARD. ONE
DELAY WAS ABOUT 6 SECONDS. ON ONE OCCASION I
WAS TURNING LEFT INTO A BUSY INTERSECTION AND
THE DELAY OCCURRED. AN ONCOMING CAR HAD TO
BRAKE TO AVOID HITTING ME BROADSIDE. THE
PROBLEM IS INTERMITTENT BUT OCCURS ALMOST
DAILY AT LEAST ONCE. IT CAN OCCUR FROM A DEAD
STOP BUT MORE FREQUENTLY OCCURS AT LOW
SPEEDS. I TOOK THE CAR BACK TO THE AUDI DEALER
AND WAS GIVEN A Q8 AS A LOANER. THIS LOANER Q8
ALSO HAD THE SAME PROBLEM. I COULD MINIMIZE THE
PROBLEM BY TURNING OFF THE AUTO START STOP
BUTTON AND DRIVING THE CAR IN S MODE. THIS HAD

NOT HELPED THE PROBLEM WITH THE Q7. AN
ACQUAINTANCE OF MINE BOUGHT A Q8 RECENTLY
AND HAS HAD THE SAME ISSUE TWO TIMES. I HAD THE
ISSUE ABOUT 10 TIMES WITH THE LOANER Q8 AND
HUNDREDS OF TIMES WITH THE Q7. I FEEL UNSAFE
DRIVING THE Q7 AND HAVE PARKED IT IN MY
DRIVEWAY. I DO NOT PLAN TO DRIVE IT AGAIN. AT THIS
POINT I DO NOT KNOW WHAT I WILL DO WITH IT. I
PURCHASED ANOTHER VEHICLE TO DRIVE INSTEAD.

48.    On January 26, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

January 26, 2020 NHTSA ID NUMBER: 11301956
Components: POWER TRAIN
NHTSA ID Number: 11301956
Incident Date October 16, 2019
Consumer Location GRAND HAVEN, MI
Vehicle Identification Number WA1CVBF1XKD****
Summary of Complaint

AS REPORTED BY OTHERS, IF THE CAR DOES NOT QUITE
COME TO A COMPLETE STOP AND ONE ACCELERATES,
THERE IS A SEVERAL SECOND DELAY AS THE ENGINE
SEEMS TO BOG DOWN. THIS IS RELATED TO THE AUTO
STOP/START SYSTEM AS THIS DELAY DOES NOT
HAPPEN IF THE AUTO START STOP IS DISABLED.

49.    On January 27, 2020, the owner of a 2020 Audi Q3 filed the following complaint

with NHTSA:

January 27, 2020 NHTSA ID NUMBER: 11302365
Components: STEERING
NHTSA ID Number: 11302365
Incident Date January 27, 2020
Consumer Location PHOENIX, AZ
Vehicle Identification Number WA1FECF35K1****
Summary of Complaint

VEHICLE IS EQUIPPED WITH AN AUTO START/STOP
FEATURE. WHEN STOPPED AT STOPLIGHTS,
INTERSECTIONS, ETC, THE VEHICLE ENGINE WILL TURN
OFF. WHEN DRIVER'S FOOT IS REMOVED FROM BRAKE
PETAL, THE ENGINE REACTIVATES. HOWEVER, ON
NUMEROUS OCCASIONS, THE POWER STEERING DID

- 19 -

NOT REACTIVATE UNTIL 1-2 SECONDS AFTER THE
ENGINE RESTARTS. THIS LEFT ME WITH NO CONTROL
OF VEHICLE STEERING (AS I WAS UNABLE TO EASILY
TURN THE STEERING WHEEL). THIS RESULTED IN
SEVERAL PROBLEMATIC INCIDENTS WHERE, FOR
EXAMPLE, THE ENGINE DISENGAGED WHILE I WAS
INCHING INTO A LEFT-HAND TURN THROUGH AN
INTERSECTION. WHEN I ATTEMPTED TO THEN START
MY TURN, THE ENGINE RE-ENGAGED, BUT I WAS
UNABLE TO TURN THE STEERING WHEEL, CAUSING ME
TO DRIVE FORWARD (TOWARD ONCOMING TRAFFIC)
INSTEAD OF BEING ABLE TO TURN THE WHEEL LEFT TO
COMPLETE MY TURN. SIMILAR EVENTS HAVE
HAPPENED ON SEVERAL OCCASIONS.

50.     On January 27, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

>     January 27, 2020 NHTSA ID NUMBER: 11302224
>     Components: POWER TRAIN
>     NHTSA ID Number: 11302224
>     Incident Date December 20, 2019
>     Consumer Location SAN ANTONIO, TX
>     Vehicle Identification Number WA1BVAF1XKD****
>     Summary of Complaint
>
>     AUTO START/STOP FEATURE KILLS ENGINE PRIOR TO
>     VEHICLE BEING COMPLETELY STOPPED RESULTING IN
>     THE DRIVER NOT APPLYING ENOUGH BRAKE "FORCE"
>     TO KEEP THE VEHICLE STATIONARY AFTER THE
>     ENGINE'S RE-IGNITION. WHEN THE ENGINE
>     SUBSEQUENTLY STARTS, THE THE VEHICLE IS JERKED
>     FORWARD AND THE DRIVER NEEDS TO RE-APPLY
>     ADDITIONAL BRAKE FORCE TO THE PEDAL IN ORDER
>     TO KEEP THE VEHICLE STATIONARY. THIS IS A SAFETY
>     CONCERN AS THE DRIVER IS MISLEAD TO HAVE
>     "COMPLETE CONTROL" OF THE VEHICLE WHEN BRINING
>     IT STATIONARY THE FIRST TIME, THEN SUBSEQUENTLY
>     HAVING TO RELY ON "QUICK REFLEXES" TO
>     COUNTERACT VEHICLE BEHAVIOR TO AVOID
>     COLLISION (FROM THE VEHICLE IN FRONT OF YOU, OR
>     FROM INTERSECTING TRAFFIC). AUDIO DEALERSHIP
>     PERFORMED SEARCH OF OPEN CAMPAIGNS & RECALLS.
>     NONE CURRENTLY AVAILABLE FOR THIS MODEL.
>     SERVICE CENTER PAPERWORK INDICATES "COULD NOT
>     REPLICATE CUSTOMERS CONCERN", BUT I WAS

- 20 -

PROVIDED EXTENSIVE TRAINING ON HOW TO
'DISENGAGE' THE AUTO START/STOP FEATURE (IF
THERE'S NO PROBLEM, WHY DISENGAGE IT?). AUDI
CUSTOMER EXPERIENCE (1-800-822-2834) IS UNABLE TO
PROVIDE ADDITIONAL GUIDANCE AND RELIES ON
THEIR SERVICE CENTERS TO HAVE THE FINAL WORD IN
VEHICLE ISSUE RESOLUTION.

51.     On January 27, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

January 27, 2020 NHTSA ID NUMBER: 11302211
Components: POWER TRAIN
NHTSA ID Number: 11302211
Incident Date December 20, 2019
Consumer Location SAN ANTONIO, TX
Vehicle Identification Number WA1BVAF1XKD****
Summary of Complaint

THE VEHICLES AUTO START/STOP FEATURE PUTS THE
DRIVER IN COMPROMISING SITUATIONS WHEN POWER
IS DEMANDED FROM THE ACCELERATOR AFTER AN
ENGINE POWER-DOWN. THE ENGINE DOES IGNITE
TIMELY, (AS SOON AS THE BRAKE PEDAL IS RELEASED)
BUT THE DELIVERY OF MOVING POWER IS DELAYED
(LAG PERIOD) FOLLOWING AN AUTO "SHUT-OFF AND
LEAVES THE VEHICLE IN COMPROMISING SITUATIONS
WHERE NO POWER CAN BE DEMANDED FROM THE
DRIVETRAIN. WHEN THIS DELAY PERIOD (LAG) HAS
PASSED, AND POWER IS FINALLY TRANSFERRED TO THE
WHEELS, THE VEHICLE EXPELS THE DEMANDED
ENERGY FORCEFULLY, JERKING YOU FORWARD. I FIND
THIS TO BE A SAFETY CONCERN PARTICULARLY FOR
LEFT HAND (YIELD) TURNS WHERE ACCELERATOR
RESPONSIVENESS IS CRITICAL BOTH THE PASSENGERS
OF THE VEHICLE AND ONCOMING TRAFFIC. AUDI
DEALERSHIP CHECKED OPEN CAMPAIGNS, RECALLS
BUT "CANNOT REPLICATE" CUSTOMERS CONCERN.
THEY DID HOWEVER, TRAIN ME ON HOW TO
"DISENGAGE" THE AUTO START/STOP FEATURE, BUT
THIS NEEDS TO BE DONE AT EVERY STARTUP. (IF THERE
IS NO PROBLEM, WHY DISENGAGE IT?) AUDI
EXPERIENCE CENTER (1-800-822-2834) SAYS THEY RELY
ON THE JUDGMENT OF THEIR SERVICE CENTERS AND
CANNOT PROVIDE FURTHER GUIDANCE. *TR

52.     On February 1, 2020, the owner of a 2019 Audi A7 filed the following complaint

with NHTSA:

>  February 1, 2020 NHTSA ID NUMBER: 11306437
>  Components: FUEL/PROPULSION SYSTEM
>  NHTSA ID Number: 11306437
>  Incident Date January 27, 2020
>  Consumer Location BALTIMORE, MD
>  Vehicle Identification Number WAUV2AF27KN****
>  Summary of Complaint
>
>  THE START STOP SYSTEM IS ALWAYS ACTIVE UPON
>  EACH DRIVING SESSION OF THE VEHICLE. HOWEVER AT
>  TIMES THE HYBRID SYSTEM WHEN IT KICKS IN,
>  DOESN'T ACTIVATE THE ENGINE QUICKLY ENOUGH SO
>  WHEN I PRESS THE GAS PEDAL IT IS NOT RESPONSIVE
>  AND I CAN'T PROPEL FORWARD. THIS IS OF CONCERN
>  WHEN I'M NOT AT A TRAFFIC LIGHT AND THE START
>  STOP SYSTEM KICKS IN DURING STOP AND GO TRAFFIC.

53.     On February 9, 2020, the owner of a 2020 Audi Q3 filed the following complaint

with NHTSA:

>  February 9, 2020 NHTSA ID NUMBER: 11308010
>  Components: ELECTRICAL SYSTEM, FUEL/PROPULSION
>  SYSTEM, STEERING
>  NHTSA ID Number: 11308010
>  Incident Date January 22, 2020
>  Consumer Location AURORA, OH
>  Vehicle Identification Number WA1EECF37L1****
>  Summary of Complaint
>
>  MY 2020 Q3 PURCHASED DECEMBER 21, 2019
>  MALFUNCTIONED IN THE MIDDLE OF AN INTERSECTION
>  JANUARY 22, 2020. IT HAD 1400 MILES ON IT. THE
>  STEERING WHEEL LOCKED AND I HAD NO ENGINE. I
>  COULD NOT TURN THE STEERING WHEEL AND IT SHUT
>  OFF THE BRAKE LIGHTS, WHICH LEFT ME IN A
>  SERIOUSLY UNSAFE SITUATION. THIS WAS THE THIRD
>  TIME IT HAPPENED. THE OTHER TWO INSTANCES
>  HAPPENED IN A PARKING LOT. I THOUGHT I HAD DONE
>  SOMETHING WRONG WITH THE START/STOP. MY
>  DEALERSHIP HAS DISMISSED MY SAFETY CONCERNS
>  AND HAVE OFFERED NO RESOLUTION TO THE
>  PROBLEM, OTHER THAN DISENGAGE THE START/STOP

EVERY TIME I GET IN THE VEHICLE. THERE WAS NO
GUARANTEE OF WHEN THIS WOULD BE FIXED AND WAS
TOLD IT COULD BE MONTHS TO GET THE PARTS. THERE
WAS ALSO NO GUARANTEE THAT THIS WOULDN'T
HAPPEN WITH THE START/STOP ALREADY
DISENGAGED. I AM DRIVING A VEHICLE THAT COULD
POTENTIALLY SHUT DOWN WITHOUT WARNING
LEAVING MY LIFE AND THE LIVES OF OTHERS AT RISK.

54.     On February 18, 2020, the owner of a 2020 Audi Q3 filed the following complaint

with NHTSA:

> February 18, 2020 NHTSA ID NUMBER: 11309844
> Components: FUEL/PROPULSION SYSTEM
> NHTSA ID Number: 11309844
> Incident Date February 18, 2020
> Consumer Location WOODBURY, NY
> Vehicle Identification Number WA1EECF38L1****
> Summary of Complaint
>
> WHILE DRIVING MY 2 MONTH OLD AUDI Q3 THIS
> MORNING THE CAR COMPLETELY STALLED WHILE
> GOING APPROXIMATELY 40 MPH. I RECEIVED AN ERROR
> MESSAGE, DRIVE LINE MALFUNCTION. THE CAR WOULD
> NOT RESPOND AT ALL AFTER APPLYING THE
> ACCELERATOR. I WAS ALMOST HIT BY 2 TRUCKS!!! I
> THEN PUT THE CAR IN PARK AND IT WAS ABLE TO
> START IT UP. I BROUGHT IT TO THE DEALER, THEY JUST
> CALLED ME AND TOLD ME THEY FOUND AN ERROR
> CODE P060C00 INDICATING AN INTERNAL CONTROL
> MODULE PROBLEM. THEY SAID THAT THERE IS NO
> KNOWN FIX AT THIS TIME BUT THEY SAID THAT THERE
> IS A KNOWN SERVICE BULLETIN ON THIS ISSUE. THEY
> SAID THAT I NEED TO DISABLE THE AUTO START STOP
> FEATURE ON THIS CAR EACH TIME I START IT UP.
>
>
> WHAT DO I DO NOW? MY WIFE WILL NOT DRIVE THIS
> CAR ANYMORE AND DOES NOT WANT ME TO DRIVE IT
> EITHER! THIS IS NOT A SAFE CAR TO DRIVE. PLEASE
> HELP!

55.     On February 25, 2020, the owner of a 20219 Audi Q8 filed the following

complaint with NHTSA:

February 25, 2020 NHTSA ID NUMBER: 11311404
Components: POWER TRAIN
NHTSA ID Number: 11311404
Incident Date February 25, 2020
Consumer Location WESTON, FL
Vehicle Identification Number WA1EVAF15KD****
Summary of Complaint

THERE IS A SIGNIFICANT LAG IN THE POWER TRAIN OF
THE AUDI Q8 AFTER BREAKING TO A COASTING SPEED
AND THEN ATTEMPTING TO ACCELERATE AGAIN. THE
GAS PEDAL IS COMPLETELY UNRESPONSIVE FOR 2-3
SECONDS DURING THIS TIME. DANGEROUS DELAY IN
THROTTLE RESPONSE DUE TO AUTO START/STOP OR
MILD-HYBRYD SYSTEMS AND CAUSING VEHICLE TO
COAST WHEN SLOWING DOWN AT A YIELD SIGN OR
INTERSECTION ETC BEFORE TRANSMISSION RE-
ENGAGES. THE VEHICLE IS POWERLESS FOR SEVERAL
SECONDS DESPITE APPLICATION OF GAS PEDAL,
CAUSING ONCOMING TRAFFIC TO POTENTIAL COLLIDE.
ALREADY REPORTED TO AUDI SERVICE BUT THEY SAID
IT'S NORMAL, WHICH I TOTALLY DISAGREE

56.     On February 26, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

February 26, 2020 NHTSA ID NUMBER: 11311677
Components: POWER TRAIN
NHTSA ID Number: 11311677
Incident Date February 26, 2020
Consumer Location SMYRNA, GA
Vehicle Identification Number WA1FVAF15KD****
Summary of Complaint

AUTO START/STOP IS TURNING OFF THE ENGINE AND
PUTTING THE CAR IN NEUTRAL BEFORE THE VEHICLE IS
COMPLETELY STOPPED. IF YOU NEED TO ACCELERATE
SUDDENLY TO CLEAR AN INTERSECTION, IT TAKES A
FEW SECONDS FOR IT TO START BACK UP AND MOVE
THE VEHICLE. LIKE MOST PEOPLE DO, THE THROTTLE
GETS PRESSED HARDER IN THE HOPES OF THE VEHICLE
MOVING. BY THE TIME THE VEHICLE STARTS BACK UP
I'M 3/4 TO THE FLOOR WITH THE THROTTLE WHICH
CAUSES THE VEHICLE TO TAKE OFF LIKE A ROCKET.
THIS IS OVERLY AGGRESSIVE START STOP IS
DANGEROUS. IT SHOULD OPERATE LIKE OTHER

SYSTEMS AND NOT SHUT OFF THE ENGINE UNTIL IT IS
AT A COMPLETE STOP. I HAVE TAKEN MY CONCERNS
TO MY LOCAL DEALER AND THEY TELL ME THAT IT IS
OPERATING AS DESIGNED.

57.    On February 26, 2020, the owner of a 2019 Audi Q5 filed the following complaint

with NHTSA:

February 26, 2020 NHTSA ID NUMBER: 11311716
Components: ENGINE
NHTSA ID Number: 11311716
Incident Date February 24, 2020
Consumer Location Unknown
Vehicle Identification Number WA1EECF31K1****
Summary of Complaint

THE CAR HAD AUTOMATICALLY SHUT OFF SEVERAL
TIMES. THIS PAST TIME (WHICH IS WHY I'M REPORTING
IT) I WAS DRIVING TO MY OFFICE THAT IS LESS THAN
1.5 MILES FROM HOUSE AND I WAS GOING THROUGH A 4
WAY INTERSECTION AND THE CAR COMPLETED SHUT
OFF, STEERING WHEEL LOCKED , BRAKE AND
ACCELERATOR PEDALS LOCKED. IT TOOK SEVERAL
MINUTES FOR ME TO GET THE CAR STARTED
AGAIN.AND I ALMOST GOT HIT FROM ONCOMING
VEHICLES. IT IS A BRAND NEW CAR WITH 6,000 MILES
ON IT. I HAD IT TOWED TO AUDI DEALERSHIP BECAUSE
I WAS NOT COMFORTABLE DRIVING THE VEHICLE. I
WAS INFORMED LATER THAT DAY BY AUDI THAT IT IS
A KNOWN ISSUE WITH THE CAR BUT THEY WILL NOT
HAVE THE PART TO FIX IT FOR 2 MONTHS. THEY STATE
AUDI SAID IT'S NOT A SAFETY ISSUE. IF YOUR CAR
SHUTS OFF RANDOMLY AND YOUR ON THE HIGHWAY
OR A BUSY INTERSECTION AND ALMOST GET HIT
THAT'S A SAFETY ISSUE. I WAS INFORMED TO TURN
THE START STOP FEATURE OFF AND THE CAR WILL BE
FINE TO DRIVE UNTIL THE PART IS AVAILABLE. I
INFORMED AUDI I HAD THAT FEATURE TURNED OFF
WHEN IT OCCURRED. THAT ASIDE WHAT IF I GOT IN
THE CAR AND FORGOT TO TURN THAT FEATURE OFF
AND IT HAPPENED AGAINS AND THIS TIME I GET HIT
AND INJURED. OR ONE OF MY CHILDREN DRIVE THE
CAR AND DON'T TURN THAT FEATURE OFF AND IT
HAPPENS TO THEM. YOU SHOULDN'T SPEND THAT KIND
OF MONEY ON A VEHICLE AND HAVE TO WORRY
ABOUT TURNING OFF FEATURES THAT ARE EQUIPPED

IN THE CAR BECAUSE THE MALFUNCTION. ALL I ASKED
FOR WAS A LOANER UNTIL THE PART TO FIX A KNOWN
ISSUE THAT AUDI ACKNOWLEDGES WAS AVAILABLE.
I'M NOT COMFORTABLE DRIVING THE VEHICLE AND
MY FAMILIES SAFETY IS AT RISK. THE FACT THAT AUDI
HADN'T MADE IT A RECALL OR SAYS IT'S NOT A
SAFETY ISSUE IS UNBELIEVABLE.

58.     On March 2, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

> March 2, 2020 NHTSA ID NUMBER: 11315572
> Components: ENGINE, POWER TRAIN
> NHTSA ID Number: 11315572
> Incident Date March 2, 2020
> Consumer Location HILLSBOROUGH, NJ
> Vehicle Identification Number WA1EVAF10KD****
> Summary of Complaint
>
> THROTTLE LAG FROM A NEAR (BUT NOT FULL) STOP. IF
> COMING TO ROLLING STOP, FROM 1-8 MPH, AND THEN
> HIT ACCELERATOR, THE CAR ENGINE REVS BUT NO
> ACCELERATION TO VEHICLE. AFTER A 2-3 SECOND
> DELAY, CAR WILL LUNGE AND ACCELERATE
> NORMALLY. SCARY WHEN NEED TO ACCELERATE
> FROM A NEAR ROLLING STOP. LEFT HAND TURNS
> ESPECIALLY DANGEROUS. EXPLAINED ISSUE TO
> DEALER, AND Q8 CAR FORUMS HAVE SAME ISSUE.
> DEALER SAYS FUNCTIONING "NORMAL", WHICH I
> DISAGREE IT IS NOT. I HAVE TRIED ALL SETTINGS FOR
> START/STOP, TRANSMISSION SETTINGS, ETC., AND
> NOTHING FULLY ALLEVIATES THE PROBLEM.
>
> THIS IS NOT EPISODIC AND A CONSISTENT,
> REPRODUCIBLE DANGEROUS ISSUE.

59.     On March 6, 2020, the owner of a 2019 Audi Q8 filed the following complaint

with NHTSA:

> March 6, 2020 NHTSA ID NUMBER: 11316645
> Components: POWER TRAIN
> NHTSA ID Number: 11316645
> Incident Date January 3, 2020
> Consumer Location ROHNERT PARK, CA

Vehicle Identification Number WA1FVAF11KD****
Summary of Complaint

WHEN START/STOP SYSTEM IS ENABLED, THE ENGINE
WILL SHUT OFF WHEN COASTING TO A STOP. IF YOU
TRY TO ACCELERATE IT TAKES 2-3 SECONDS FOR THE
CAR TO ACCELERATE. THIS IS EXTREMELY DANGEROUS
ON LEFT HAND YIELD TURNS WHERE THERE IS
ONCOMING TRAFFIC. THIS PROBLEM CAN BE SOLVED
BY TURNING OFF THE START/STOP SYSTEMS OR
PUTTING THE TRANSMISSION INTO SPORT MODE WHICH
WILL AUTOMATICALLY TURN OFF THE START/STOP
SYSTEM. IN ADDITION, THE CAR DOES NOT REMEMBER
YOUR SETTING WHEN THE CAR IS TURNED OFF. SO
EVERYTIME YOU START THE VEHICLE YOU HAVE TO
REMEMBER TO TURN OFF THE START/STOP SYSTEMS.
AUDI DEALER ASKNOWLDEGED THE ISSUE AND
PERFORMED UPDATE, BUT THE ISSUE STILL PERSISTS.

60.      On March 7, 2020, the owner of a 2020 Audi Q8 filed the following complaint

with NHTSA:

March 7, 2020 NHTSA ID NUMBER: 11316725
Components: POWER TRAIN
NHTSA ID Number: 11316725
Incident Date March 3, 2020
Consumer Location CHATTANOOGA, TN
Vehicle Identification Number WA1FVAF11KD****
Summary of Complaint

AUTO START/STOP IS SO LAGGY WHEN RE—STARTING
THE ENGINE, ESPECIALLY AT LARGE CROSSINGS W
HEAVY TRAFFIC OR ROUNDABOUTS. I HAD ALMOST 5
ACCIDENTS IN THE PAST YEAR BECAUSE YOU
ANTICIPATE ONCOMING TRAFFIC AND FROM
EXPERIENCE YOU KNOW YOU CAN EASILY TURN OR
GO, AND THEN YOU JUST ROLL A BIT AND THERE IS
NOTHING HAPPENING AND YOU HAVE NO CHANCE TO
DO ANYTHING.

61.      On March 12, 2020, the owner of a 2020 Audi Q5 filed the following complaint

with NHTSA:

March 12, 2020 NHTSA ID NUMBER: 11317773
Components: STEERING

NHTSA ID Number: 11317773
Incident Date March 3, 2020
Consumer Location SAN DIEGO, CA
Vehicle Identification Number WA1DECF34L1****
Summary of Complaint

THERE IS A 3-4 SECOND DELAY IN THE STEERING ASSIST
AFTER ENGINE RESTARTS FROM A START/STOP EVENT.
(AUTO START/STOP FEATURE)

I ALMOST GOT INTO AN ACCIDENT BECAUSE I
EXPECTED THE POWER STEERING TO BE ACTIVE WHILE
THE CAR IS ON.

I ATTEMPTED TO MAKE A RIGHT HAND TURN ON A
TRAFFIC LIGHT, WHEN I LET GO OF THE BRAKE, THE
ENGINE STARTED AND CAR STARTED MOVING
FORWARD. I WAS UNABLE TO TURN MY STEERING
WHEEL SO THE CAR WENT FORWARD AND I ALMOST
HIT THE CAR IN THE NEXT LANE OVER. AFTER TAKING
IT TO THE DEALERSHIP, THEY SAID THAT AUDI KNEW
ABOUT THIS AND STATED THAT THIS IS WITHIN
SPECIFICATION. (ATTACHED THEIR INTERNAL
TECHNICAL SERVICE BULLETIN ABOUT THIS
PARTICULAR ISSUE)

MEANWHILE MY CAR WAS IN THE SHOP FOR A WEEK, I
HAD A LOANER AUDI SQ5 THAT DID NOT HAVE THIS
PROBLEM. NOR ANY OF THE CARS I'VE EVER DRIVEN
BEFORE. I EVEN SHOWED THIS ISSUE TO A FEW OF MY
FRIENDS AND EVEN THEY AGREED THAT THIS WAS NOT
SAFE.

WHAT'S EVEN MORE UPSETTING IS THAT AUDI'S
RESPONSE WAS "AUDI TECHNICAL ASSISTANCE
RECOMMENDS TURNING OFF START/STOP SYSTEM TO
AVOID STEERING CONCERN"

SO WHY WOULD I PAY FOR A FEATURE THAT I AM NOT
ABLE TO USE AND IF I DO USE THE FEATURE, I'M
ENDANGERING MYSELF AS WELL AS OTHERS ON THE
ROAD? (THIS IS ALSO INCLUDED IN MY ATTACHMENTS.)
I DO HOME SOMEONE CAN HELP ME BECAUSE AUDI
WILL NOT.

62.     On April 27, 2020, the owner of a 2020 Audi Q5 filed the following complaint

with NHTSA:

> April 27, 2020 NHTSA ID NUMBER: 11322405
> Components: SERVICE BRAKES, ELECTRICAL SYSTEM,
> STEERING
> NHTSA ID Number: 11322405
> Incident Date February 20, 2020
> Consumer Location BEVERLY HILLS, CA
> Vehicle Identification Number WA1BNAFY3L2****
> Summary of Complaint
>
> OVERALL PROBLEM:
>
> AUDI Q5 2020 APPEARS TO HAVE A COMPUTER
> MALFUNCTION THAT INSTANTLY DISABLES ALL
> SYSTEMS. VEHICLE "SHUT ITSELF OFF" AT A BRIEF STOP
> AND BECAME VERY DIFFICULT TO CONTROL, ROLLING
> INTO INTERSECTION.
>
> DETAILS:
>
> I STOPPED CAR AT RESIDENTIAL NEIGHBORHOOD STOP
> SIGN (BRIEF AND COMPLETE STOP, NO WAIT),
> IMMEDIATELY READY TO PROCEED FORWARD. AUDI'S
> "AUTO STOP/START" FEATURE SHUT OFF THE ENGINE,
> THEN IMMEDIATELY ALL ELECTRONICS SHUT DOWN.
> THE CAR BASICALLY "TURNED ITSELF OFF."
>
> VEHICLE THEN BEGAN DRIFTING/COASTING INTO
> INTERSECTION. CONTROLS WERE UNRESPONSIVE. I
> REALIZED THE POWER BRAKES AND POWER STEERING
> WERE DISABLED. I BRAKED VERY HARD, WHICH
> STOPPED THE CAR. HAD TO KEEP BRAKES PRESSED
> VERY HARD TO KEEP CAR FROM MOVING. IGNITION
> BUTTON WAS UNRESPONSIVE.
>
> I THEN NOTICED A SMALL MESSAGE ON THE
> DASHBOARD CONTROLS WHICH READ SOMETHING
> LIKE "START/STOP IGNITION SYSTEM DISABLED — PUT
> CAR IN P." (THIS WAS THE ONLY WORKING ELECTRICAL
> FEATURE I NOTICED, THE EVENT WAS FRIGHTENING
> AND DISORIENTING, BUT I'M FAIRLY SURE NOTHING
> ELSE WAS FUNCTIONING). I THEN SHIFTED GEARSHIFT
> TO PARK, AND WAS ABLE TO START THE CAR AND
> DRIVE AWAY.

I REPORTED PROBLEM TO DEALER. DEALER CLAIMED
TO INSPECT VEHICLE, AND SAID THEY WERE UNABLE
TO FIND ANYTHING WRONG. DEALER SAID VEHICLE'S
COMPUTER HAD NO RECORD/MEMORY OF THE
INCIDENT. DEALER ALSO SEEMED RESISTANT TO
PROPERLY DOCUMENTING THE INCIDENT ON THEIR
PAPERWORK.

I REPORTED THE PROBLEM TO AUDI CORPORATE IN
AUBURN HILLS MI, EXPLAINING I NO LONGER FELT
SAFE DRIVING THIS CAR, AND WOULD NOT DRIVE IT
AGAIN. AUDI CLAIMED TO PERFORM THEIR OWN
INVESTIGATION, AND THEIR BRIEF REPLY SAID THAT
THEY WERE NOT OBLIGATED TO DO ANYTHING UNDER
APPLICABLE LEMON LAWS.

CAR WAS IN 3RD MONTH OF LEASE, ~150 MILES.
PREVIOUSLY I DROVE AN AUDI A4 2017 FOR 3 YEARS SO
I WAS/AM VERY FAMILIAR WITH THE WAY AUDIS
OPERATE.

63.     The above complaints are a subset of the dozens of complaints submitted to

NHTSA for Start/Stop system issues in the Affected Vehicles, which all tell the same central

story of vehicle engines, power steering and brake assist shutting down too early and starting up

too late. The safety implications are obvious, as illustrated by the complaints reported to

NHTSA.

64.     It cannot reasonably be questioned that Audi is now, and was long before it first

began selling Affected Vehicles, fully aware of the Start/Stop Defect in the Affected Vehicles.

Audi has acquired that knowledge through at least: (1) NHTSA complaints; (2) warranty claims;

(3) non-warranty repair records; (4) testing it claims to undertake in the development of new

models; and (5) customer complaints to Audi and its dealers.

65.     Like all vehicle manufacturers, Audi monitors consumer reports and sentiments

about its products that appear on social media, blogs, review sites, enthusiast sites and other

internet resources. Audi has toll-free numbers and email and other communication systems that

are devoted to obtaining information (and complaints) from consumers about their products. Audi has certainly received numerous complaints about the Start/Stop Defect in Affected Vehicles, as evidence, in part, by the NHTSA complaints that expressly indicate contact with Audi directly and its dealers.

66.    Audi also receives technical information and reports from its dealers and service centers concerning warranty repairs, requests for warranty coverage and safety complaints from vehicle owners.

**D.    Audi Sells, Markets and Advertises Audi Vehicles As Technologically Advanced, Dependable and Safe**

67.    Audi spends millions of dollars on advertising and focuses that advertising intently on claims of advanced technology, safety and dependability. Audi knows and intends that consumers, including purchasers of Affected Vehicles, will buy their vehicles because they believe them to be hi-tech, safe and dependable.

68.    For example, Audi touted the following Affected Vehicles for safety:

- 2020 A6 as "Top Safety Pick +", A7 and Q8 as "Top Safety Picks."[5]

- 2019-20 Q3 as achieving "5-Star Overall Safety Rating."[6]

- 2019 A3 as "Top Safety Pick +", A7 as "Top Safety Pick."[7]

- 2019 Q8 as achieving "5-Star Overall Safety Rating."[8]

- 2019 A6 and Q8 as "Top Safety Picks."[9]

---

[5] *See* February 28, 2020 press release at: http://media.audiusa.com/en-us/releases/392

[6] *See* February 12, 2020 press release at: http://media.audiusa.com/en-us/releases/389

[7] October 21, 2019 press release at: http://media.audiusa.com/en-us/releases/359

[8] March 28, 2019 press release at: http://media.audiusa.com/en-us/releases/308

[9] March 26, 2019 press release at: http://media.audiusa.com/en-us/releases/307

- 2018 Q5 and Q7 as achieving "5-star Safety Rating."[10]

- 2017-18 A4 Allroad, 2018 A5 Sportback, A5 Coupe, Q5, 2017-18 A4, Q7, A3 and A6 as "Top Safety Picks."[11]

69.     A car with the Start/Stop Defect that can cause the power steering and brake assist to turn off while the vehicle is still moving, and delays acceleration, steering and braking on starting from a stop, exposes its occupants to the risk of injury and death. The Affected Vehicles have the Start/Stop Defect and are, therefore, not safe and not dependable. Thus, Audi's marketing of Affected Vehicles as technologically advanced, safe and dependable is false and misleading and omits facts that would be material to consumers who purchase or lease Affected Vehicles.

70.     Audi's advertising for Affected Vehicles conveys a pervasive message that Audi vehicles are technologically advanced, safe and dependable. Safety and dependability are material to consumers when purchasing or leasing a vehicle.

71.     In the booklets that Audi provides every purchaser of a new Affected Vehicle, Audi states:

> Quality, dependability, and peace of mind
>
> We are dedicated to ensuring that you enjoy exceptional quality, dependability, and peace of mind throughout your ownership experience, and your authorized Audi dealer should be able to answer any questions regarding the service and operation of your Audi. Your satisfaction with our product and the service provided by your authorized Audi dealer is of great importance to us.

---

[10] December 19, 2017 press release at: http://media.audiusa.com/en-us/releases/214

[11] November 2, 2017 press release at: http://media.audiusa.com/en-us/releases/202

72.     Audi advertised Affected Vehicles as safe and reliable, but it concealed the danger of the Start/Stop Defect. Audi:

      a.     Failed to disclose, at and after the time of purchase, lease, and/or service, the Start/Stop Defect, despite its knowledge;

      b.     Failed to disclose, at and after the time of purchase, lease, and/or service, that the Start/Stop systems were defective and not fit for their ordinary purpose, despite its knowledge; and

      c.     Failed to disclose and actively concealed the existence and pervasiveness of the Start/Stop Defect, despite its knowledge.

**E.     Plaintiff and Class Members Would Not Have Purchased or Leased, or Would Have Paid Less for Affected Vehicles Had They Known of the Start/Stop Defect**

73.     No owner or lessee of an Affected Vehicle would have purchased their vehicle, or at least would have paid less for their Affected Vehicle, had they known that Affected Vehicles contained the Start/Stop Defect, that would make the vehicles unsafe when slowing to a stop or restarting from a stop, or had they known that Audi would fail to fix a known defect in the Start/Stop system.

74.     As a result of the Start/Stop Defect in Affected Vehicles and the costs of repairs required to ameliorate it, Plaintiff and all owners of Affected Vehicles (the "Class") have suffered injury in fact, incurred damages, and have suffered harm as a result of Audi's acts and omissions. Plaintiff and Class members seek remedies under the consumer protection statutes of the states in which they reside and/or purchased their Affected Vehicles, and also seek recovery for Audi's breach of express warranty, breach of implied warranty, breach of the duty of good faith and fair dealing, and fraudulent concealment.

75.     Plaintiff and each Class member suffered injury as they purchased their Affected Vehicle under the express and implied warranties that their vehicles would operate safely throughout the useful life of such vehicles. A vehicle containing the Start/Stop Defect does not

operate as warranted and for its intended purpose because it does not operate safely or reliably.

In addition, an Affected Vehicle is worth less than a correctly operating/non-faulty Affected

Vehicle.

**F.    Audi Has Manipulated Its Warranty To Minimize Its Obligation To Fix the Start/Stop Defect In Affected Vehicles**

76.    In connection with the sale of new vehicles, including the Affected Vehicles,

Audi provides written materials to purchasers upon delivery of a new Audi (the "New Owner

Package").[12]

77.    Under the caption "Warranty Package," in the New Owner Package, Audi states:

Audi provides New Vehicle limited Warranty coverage for your
vehicle. The warranty duration is 4 years or 50,000 miles from
your vehicle's in-service date, whichever occurs first, and covers
defects in manufacturer's material and workmanship

78.    Under the heading "Warranty Coverage," in the New Owner Package, Audi

States:

Audi's confidence in its vehicles is demonstrated by the extensive
warranty package provided for you. We recommend you read the
full warranty information printed in this booklet and the California
Emissions Warranty Supplement. To obtain service under this
warranty the vehicle must be brought upon discovery of a defect in
manufacturer's material or workmanship to an authorized Audi
dealer in the United States, including its territories, during normal
business hours.

79.    Under the heading "Customer Satisfaction and Assistance," in the New Owner

Package, Audi states:

---

[12] An exemplar of the 2017 New Owner package was recently filed in another lawsuit against
Audi.  *See, e.g.,* https://www.docketbird.com/court-documents/Valeria-Mercado-v-Audi-of-
America-LLC-et-al/Exhibit-quot-A-quot-2017-Audi-Warranty-Manual-Modified-on-3-18-2019-
jp/cacd-5:2018-cv-02388-00055-001.

**Quality, dependability, and peace of mind**

We are dedicated to ensuring that you enjoy exceptional quality, dependability, and peace of mind throughout your ownership experience, and your authorized Audi dealer should be able to answer any questions regarding the service and operation of your Audi. Your satisfaction with our product and the service provided by your authorized Audi dealer is of great importance to us.

80.     Under the heading "Warranty," and subheading "New Vehicle Limited Warranty" in the New Owner Package, Audi states:

**What is covered**

The warranty covers any repair or replacement to correct a defect in manufacturer's material and workmanship (i.e., a mechanical defect). Your authorized Audi dealer will repair the defective part or replace it with a new or remanufactured Audi Genuine Part free of charge.

81.     Audi is not honoring the plain language of its warranty agreement. Even when owners of Affected Vehicles have presented their cars to Audi service centers and complained of issues traceable to the Start/Stop Defect, Audi has: (1) failed to notify them of the Start/Stop Defect in their Affected Vehicles; and/or (2) refused to repair the defect or provide alternative/replacement transportation that is not defective. Likewise, Affected Vehicle owners who do not complain of issues relating to the Start/Stop Defect are never informed of the Start/Stop Defect in Affected Vehicles, and are never offered a repair.

**G.     Allegations Establishing Agency Relationship Between Manufacturer Audi and Audi Dealerships.**

82.     Upon information and belief, Defendants impliedly or expressly acknowledged that Audi-authorized dealerships are its sales agents, the dealers have accepted that undertaking, Audi has the ability to control authorized Audi dealers, and Audi acts as the principal in that relationship, as is shown by the following:

i.     Manufacturer Audi can terminate the relationship with its dealers at will;

- 35 -

ii.      The relationships are indefinite;

iii.     Manufacturer Audi is in the business of selling vehicles as are its dealers;

iv.     Manufacturer Audi provides tools and resources for Audi dealers to sell vehicles;

v.      Manufacturer Audi supervises its dealers regularly;

vi.     Without Manufacturer Audi, the relevant Audi dealers would not exist;

vii.    Manufacturer Audi requires the following of its dealers:

      a.      Reporting of sales;

      b.      Computer network connection with Manufacturer Audi;

      c.      Training of dealers' sales and technical personnel;

      d.      Use of Manufacturer Audi-supplied computer software;

      e.      Participation in Manufacturer Audi's training programs;

      f.      Establishment and maintenance of service departments in Audi dealerships;

      g.      Certify Audi pre-owned vehicles;

      h.      Reporting to Manufacturer Audi with respect to the vehicle delivery, including reporting Plaintiff's names, addresses, preferred titles, primary and business phone numbers, e-mail addresses, vehicle VIN numbers, delivery date, type of sale, lease/finance terms, factory incentive coding, if applicable, vehicles' odometer readings, extended service contract sale designations, if any, and names of delivering dealership employees; and

      i.      Displaying Manufacturer Audi logos on signs, literature, products, and brochures within Audi dealerships.

viii.   Dealerships bind Manufacturer Audi with respect to:

      a.      Warranty repairs on the vehicles the dealers sell; and

      b.      Issuing service contracts administered by Manufacturer Audi.

ix.     Manufacturer Audi further exercises control over its dealers with respect to:

a.    Financial incentives given to Audi dealer employees;

b.    Locations of dealers;

c.    Testing and certification of dealership personnel to ensure compliance with Manufacturer Audi's policies and procedures; and

d.    Customer satisfaction surveys, pursuant to which Manufacturer Audi allocates the number of Audi cars to each dealer, thereby directly controlling dealership profits.

x.     Audi dealers sell Audi vehicles on Manufacturer Audi's behalf, pursuant to a "floor plan," and Manufacturer Audi does not receive payment for its cars until the dealerships sell them.

xi.    Dealerships bear Audi's brand names, use Audi's logos in advertising and on warranty repair orders, post Audi -brand signs for the public to see, and enjoy a franchise to sell Manufacturer Audi's products, including the Class Vehicles.

xii.   Manufacturer Audi requires Audi dealers to follow the rules and policies of Manufacturer Audi in conducting all aspects of dealer business, including the delivery of Manufacturer Audi's warranties described above, and the servicing of defective vehicles such as the Class Vehicles.

xiii.  Manufacturer Audi requires its dealers to post Audi's brand names, logos, and signs at dealer locations, including dealer service departments, and to identify himself and to the public as authorized Audi dealers and servicing outlets for Manufacturer Audi cars.

xiv.   Manufacturer Audi requires its dealers to use service and repair forms containing Manufacturer Audi's brand names and logos.

xv.    Manufacturer Audi requires Audi dealers to perform Manufacturer Audi's warranty diagnoses and repairs, and to do the diagnoses and repairs according to the procedures and policies set forth in writing by Manufacturer Audi.

xvi.   Manufacturer Audi requires Audi dealers to use parts and tools either provided by Manufacturer Audi, or approved by Manufacturer Audi, and to inform Audi when dealers discover that unauthorized parts have been installed on one of Manufacturer Audi's vehicles.

xvii.  Manufacturer Audi requires dealers' service and repair employees to be trained by Audi in the methods of repair of Audi-brand vehicles.

xviii. Manufacturer Audi audits Audi dealerships' sales and service departments and directly contacts the customers of said dealers to determine their level

- 37 -

of satisfaction with the sale and repair services provided by the dealers; dealers are then granted financial incentives or reprimanded depending on the level of satisfaction.

xix.   Manufacturer Audi requires its dealers to provide Audi with monthly statements and records pertaining, in part, to dealers' sales and servicing of Manufacturer Audi's vehicles.

xx.   Manufacturer Audi provides technical service bulletins and messages to its dealers detailing chronic defects present in product lines, and repair procedures to be followed for chronic defects.

xxi.   Manufacturer Audi provides its dealers with specially trained service and repair consultants with whom dealers are required by Manufacturer Audi to consult when dealers are unable to correct a vehicle defect on their own.

xxii.   Manufacturer Audi requires Audi -brand vehicle owners to go to authorized Audi dealers to obtain servicing under Audi warranties; and

xxiii.   Audi dealers are required to notify Manufacturer Audi whenever a car is sold or put into warranty service.

## VI.   TOLLING OF THE STATUTE OF LIMITATIONS

**A.   Discovery Rule Tolling**

83.   Class members had no way of knowing about Audi's deception with respect to the Start/Stop Defect in the Affected Vehicles.

84.   Within the time period of any applicable statutes of limitation, Plaintiff and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Audi was concealing the Start/Stop Defect in Affected Vehicles and misrepresenting the safety, quality and reliability of the Affected Vehicles.

85.   Plaintiff and the other Class members did not discover, and did not know of, facts that would have caused a reasonable person to suspect that Audi did not report information within their knowledge to federal and state authorities, the dealerships, or consumers; nor would a reasonable and diligent investigation have disclosed that Audi had concealed information about the true nature of the Start/Stop Defect in the Affected Vehicles, which was discovered by

- 38 -

Plaintiff only shortly before this action was filed. Nor, in any event, would such an investigation on the part of Plaintiff and other Class members have disclosed that Audi valued profits over the safety of its customers, their friends and family and innocent bystanders.

86.     For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to claims asserted herein.

**B.     Fraudulent Concealment Tolling**

87.     All applicable statutes of limitation have also been tolled by the Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

88.     Instead of disclosing the existence of the Start/Stop Defect, Audi falsely represented that the Affected Vehicles were safe, dependable and of high quality.

**C.     Estoppel**

89.     The Defendants were under a continuous duty to disclose to Plaintiff and the other Class members the true character, quality, and nature of the Start/Stop system in the Affected Vehicles.

90.     The Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the true nature, quality, and character of the Start/Stop system in the Affected Vehicles.

91.     Based on the foregoing, the Defendants are estopped from relying on any statutes of limitations in defense of this action.

**VII.     CLASS ALLEGATIONS**

92.     Plaintiff brings this action on behalf of himself and as a class action pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class and subclass (collectively, the "Classes"):

- 39 -

**The Nationwide Class**

> All persons or entities in the United States who owned and/or
> leased an Audi vehicle described herein as an Affected Vehicle.

**The Florida Subclass**

> All persons or entities in the state of Florida who owned and/or
> leased an Audi vehicle described herein as an Affected Vehicle.

93.     Excluded from the Class and subclass are individuals who have personal injury claims resulting from the Start/Stop system in the Affected Vehicles. Also excluded from the Class are the Defendants and their subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the Judge to whom this case is assigned and his/her immediate family. Plaintiff reserves the right to revise the Class definitions based upon information learned through discovery.

94.     Certification of Plaintiff's' claims for classwide treatment is appropriate because Plaintiff can prove the elements of their claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

95.     This action has been brought and may be properly maintained on behalf of each of the Classes proposed herein under Federal Rule of Civil Procedure 23.

96.     **Numerosity**. Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so numerous and geographically dispersed that individual joinder of all Class members is impracticable. While Plaintiff are informed and believe—based on publicly available sales data for Affected Vehicles—that there are tens if not hundreds of thousands of members of the Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendants' books and records. Class members may be notified of the pendency of this

action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

97.     **Commonality and Predominance**: Federal Rule of Civil Procedure 23(a)(2) & (b)(3): This action involves common questions of law and fact which predominate over any questions affecting individual Class members, including, without limitation:

a.     Whether the Defendants engaged in the conduct alleged herein;

b.     Whether the Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the United States;

c.     Whether the Affected Vehicles contain a defect in their Start/Stop system and if so, whether it is a safety defect;

d.     Whether the Defendants knew about the defect in the Start/Stop system of Affected Vehicles and, if so, how long the Defendants have known;

e.     When the Defendants discovered the Start/Stop Defect in the Affected Vehicles, and what, if anything, they did in response;

f.     Whether Defendants have sought to minimize their warranty expenses by refusing to repair the Start/Stop Defect in Affected Vehicles;

g.     Whether the Defendants' conduct violates consumer protection statutes and constitutes breach of contract and fraudulent concealment as asserted herein;

h.     Whether Plaintiff and the other Class members overpaid for their Affected Vehicles;

i.     Whether Plaintiff experienced out-of-pocket losses from replacing parts as a result of the Start/Stop Defect, and if so, how much; and

j.     Whether Plaintiff and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

98.     **Typicality**: Federal Rule of Civil Procedure 23(a)(3): Plaintiff' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the Defendants' wrongful conduct as described above.

99.     **Adequacy**: Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representatives because his interests do not conflict with the interests of the other members of the Classes he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff and his counsel.

100.    **Declaratory Relief**: Federal Rule of Civil Procedure 23(b)(2): the Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate declaratory relief, with respect to each Class as a whole.

101.    **Superiority**: Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for the members of the Classes to individually seek redress for the Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VIII.   CLAIMS BROUGHT ON BEHALF OF THE NATIONWIDE CLASS

### COUNT I
### VIOLATIONS OF 15 U.S.C. § 2301, *ET SEQ.*
### THE MAGNUSON-MOSS WARRANTY ACT

102.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

103.   This claim is brought on behalf of the Nationwide Class.

104.   Each Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

105.   Audi is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)–(5).

106.   The Affected Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

107.   15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

108.   Audi's New Vehicle Limited Warranty ("NVLW") is a written warranty within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6). The Affected Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

109.   By its own terms, Audi's NVLW is automatically transferred to subsequent owners of Affected Vehicles, for the entire term of the warranty from its in-service date or until the mileage limit has been reached.

110.   Audi breached these warranties, as described in more detail above. Without limitation, the Affected Vehicles are equipped with a defective Start/Stop system that fails to function as expected, and can cause loss of power steering and brake assist, and loss of power,

leading to vehicle accidents and collisions. The Affected Vehicles share a common design defect in that the Start/Stop system fails to operate as represented by Audi.

111.    Plaintiff and the other Class members have had sufficient direct dealings with either Audi or its agents (*e.g.*, dealerships and technical support) to establish privity of contract between Audi on one hand, and Plaintiff and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between Audi and its dealers, and specifically, of Audi's implied warranties. The dealers were not intended to be the ultimate consumers of the Affected Vehicles and have no rights under the warranty agreements provided with the Affected Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

112.    Affording Audi a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

113.    At the time of sale or lease of each Affected Vehicle, Audi knew, should have known, or was reckless in not knowing of its misrepresentations and omissions concerning the Affected Vehicle's inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design. Audi has not offered a fix or indicated that a fix is available. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford Audi a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

114.    Plaintiff and the other Class members would suffer economic hardship if they returned their Affected Vehicles but did not receive the return of all payments made by them. Because Audi is refusing to acknowledge any revocation of acceptance and return immediately

any payments made, Plaintiff and the other Class members have not re-accepted their Affected Vehicles by retaining them.

115.    The amount in controversy of Plaintiff's' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

116.    Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law, including diminution in value of the Affected Vehicles, in an amount to be proven at trial.

## COUNT II
## FRAUDULENT CONCEALMENT
## (BASED ON COMMON LAW)

117.    Plaintiff restates and re-alleges, and incorporate herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows:

118.    Plaintiff brings this Count on behalf of himself and the Nationwide Class.

119.    The law of fraudulent concealment is substantially similar in each state such that this claim can be brought nationwide, based upon the common law in each state.

120.    Defendants intentionally concealed that the Affected Vehicles are defective.

121.    Defendants further affirmatively misrepresented to Plaintiff in advertising and other forms of communication, including standard and uniform material provided with each Affected Vehicle and on its website, that the Affected Vehicles they was selling had no significant defects, that the Affected Vehicles were safe, reliable and of high quality, and would perform and operate in a safe manner.

122.    Defendants knew about the defect in the Affected Vehicle when these representations were made.

123.    The Affected Vehicles purchased by Plaintiff and the other Class members contained defective Start/Stop systems.

124.    Defendants had a duty to disclose that the Affected Vehicle contained a fundamental defect as alleged herein, because Plaintiff and the other Class members relied on Defendants' material representations.

125.    As alleged herein, at all relevant times, Defendants have held out the Affected Vehicles to be free from defects such as the Start/Stop Defect. Defendants touted and continue to tout the many benefits and advantages of the Affected Vehicles, but nonetheless failed to disclose important facts related to the defect. This made Defendants' other disclosures about the Affected Vehicles deceptive.

126.    The truth about the defective Affected Vehicles was known only to Defendants; Plaintiff and the other Class members did not know of these facts and Defendants actively concealed these facts from Plaintiff and Class members.

127.    Plaintiff and the other Class members reasonably relied upon Defendants' deception. They had no way of knowing that Defendants' representations were false, misleading, or incomplete. As consumers, Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own. Rather, Defendants intended to deceive Plaintiff and Class members by concealing the true facts about the Affected Vehicles.

128.    Defendants' false representations and omissions were material to consumers because they concerned safety of the Affected Vehicle, which played a significant role in the value of the Affected Vehicle.

129.    Defendants had a duty to disclose the Start/Stop Defect and violations with respect to the Affected Vehicles because they concerned the safety of the Affected Vehicles, the

details of the true facts were known and/or accessible only to Defendants, because Defendants had exclusive knowledge as to such facts, and because Defendants knew these facts were not known to or reasonably discoverable by Plaintiff or Class members.

130.    Defendants also had a duty to disclose because it made general affirmative representations about the safety and dependability of Affected Vehicles, without telling consumers that the Affected Vehicles had a fundamental system defect that would affect the safety, quality and reliability of the Affected Vehicle.

131.    Defendants' disclosures were misleading, deceptive, and incomplete because they failed to inform consumers of the additional facts regarding the Start/Stop Defect as set forth herein. These omitted and concealed facts were material because they directly impact the safety and value of the Affected Vehicles purchased by Plaintiff and Class members.

132.    Defendants have still not made full and adequate disclosures and continue to defraud Plaintiff and Class members by concealing material information regarding the defect in the Affected Vehicles.

133.    Plaintiff and Class members were unaware of the omitted material facts referenced herein, and they would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased or paid as much for Affected Vehicles with the Start/Stop Defect, and/or would have taken other affirmative steps in light of the information concealed from them. Plaintiff' and Class members' actions were justified. Defendants were in exclusive control of the material facts, and such facts were not generally known to the public, Plaintiff, or Class members.

134.    Because of the concealment and/or suppression of facts, Plaintiff and Class members sustained damage because they own Affected Vehicles that are diminished in value as a

result of Defendants' concealment of the true safety and quality of Affected Vehicles. Had

Plaintiff and Class members been aware of the Start/Stop Defect, and Defendants' disregard for

the truth, Plaintiff and Class members would have paid less for their Affected Vehicles or would

not have purchased them at all.

135.    The value of Plaintiff's' and Class members' Affected Vehicle has diminished as

a result of Defendants' fraudulent concealment of the Start/Stop Defect, which has made any

reasonable consumer reluctant to purchase an Affected Vehicle, let alone pay what otherwise

would have been fair market value for the Affected Vehicle.

136.    Accordingly, Defendants are liable to Plaintiff and Class members for damages in

an amount to be proven at trial.

137.    Defendants' acts were done wantonly, maliciously, oppressively, deliberately,

with intent to defraud, and in reckless disregard of Plaintiff's and Class members' rights and the

representations that Defendants made to them, in order to enrich Defendants. Defendants'

conduct warrants an assessment of punitive damages in an amount sufficient to deter such

conduct in the future, which amount is to be determined according to proof.

## COUNT III
## VIOLATIONS OF THE VIRGINIA CONSUMER PROTECTION ACT
### (VA. CODE ANN. §§ 59.1-196, ET SEQ.)

138.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set

forth herein.

139.    This claim is brought on behalf of the Nationwide Class.

140.    The Virginia Consumer Protection prohibits "(5) misrepresenting that goods or

services have certain quantities, characteristics, ingredients, uses, or benefits; (6) misrepresenting

that goods or services are of a particular standard, quality, grade, style, or model; … (8)

advertising goods or services with intent not to sell them as advertised …; [and] (14) using any

other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction[.]"  VA. CODE ANN. § 59.1-200(A).

141.    Audi is a "person" as defined by VA. CODE ANN. § 59.1-198.  The transactions between Plaintiff and the other Class members on one hand and Audi on the other, leading to the purchase or lease of the Affected Vehicles by Plaintiff and the other Class members, are "consumer transactions" as defined by VA. CODE ANN. § 59.1-198, because the Affected Vehicles were purchased or leased primarily for personal, family or household purposes.

142.    In the course of Audi's business, it willfully failed to disclose and actively concealed the Start/Stop Defect in Affected Vehicles as described above.  Accordingly, Audi engaged in acts and practices violating VA. CODE ANN. § 59.1-200(A), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

143.    Audi's actions as set forth above occurred in the conduct of trade or commerce.

144.    Audi's conduct proximately caused injuries to Plaintiff and the other Class members.

145.    Plaintiff and the other Class members were injured as a result of Audi's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Audi's misrepresentations and omissions.

146.    Audi actively and willfully concealed and/or suppressed the material facts regarding the defective Start/Stop system and the Affected Vehicles, in whole or in part, with the intent to deceive and mislead Plaintiff and the other Class members and to induce Plaintiff and the other Class members to purchase or lease Affected Vehicles at a higher price, which did not match the Affected Vehicles' true value.  Plaintiff and the other Class members therefore seek treble damages.

## IX.    CLAIMS BROUGHT ON BEHALF OF THE STATE SUBCLASS

### COUNT IV
### BREACH OF CONTRACT
### (COMMON LAW)

147.    Plaintiff restates and re-alleges, and incorporates herein by reference, the preceding paragraphs as if fully set forth herein and further alleges as follows.

148.    Plaintiff Pitts brings this Count on behalf of the Florida Subclass.

149.    Defendants' misrepresentations and omissions alleged herein, including but not limited to Defendants' concealment and suppression of material facts concerning the Affected Vehicles, including the reliability and durability of the Start/Stop system, caused Plaintiff and the other Class members to make their purchases or leases of their Affected Vehicles.

150.    Absent those misrepresentations and omissions, Plaintiff would not have purchased or leased these vehicles, would not have purchased or leased these vehicles at the prices they paid, and/or would have purchased or leased different vehicles that did not contain the Defective Start/Stop system. Accordingly, Plaintiff and other Class members overpaid for their vehicles and did not receive the benefit of their bargain.

151.    Each and every sale or lease of a vehicle constitutes a contract between Defendants and the purchaser or lessee. Defendants breached these contracts by selling or leasing to Plaintiff and the other Class members defective vehicles and by misrepresenting or failing to

disclose material facts concerning the safety, durability, performance, and quality of the Affected Vehicles.

152.    As a direct and proximate result of Defendants' breach of contract, Plaintiff and other Class members have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

## COUNT V
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## UNDER STATE COMMERCIAL CODES

153.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

154.    Plaintiff Pitts brings this claim on behalf of the Florida Subclass for violations of implied warranty of merchantability under his state's commercial codes, including, without limitation, the Florida Uniform Commercial Code, Fl. Stat. Ann. § 627.314, *et seq.*

155.    Defendants are and were at all relevant times merchants with respect to automobiles such as the Affected Vehicles under the state commercial codes.

156.    A warranty that the Affected Vehicles were in merchantable condition was implied by law in the instant transaction, pursuant to the state commercial codes.

157.    Defendants marketed the Affected Vehicles as safe, dependable and high quality automobiles that would functions as reasonably expected by consumers and in accordance with industry standards. Such representations formed the basis of the bargain in Plaintiff' and Class members' decisions to purchase the Affected Vehicles.

158.    Plaintiff and other Class members purchased the Affected Vehicles from Defendants, or through Defendants' authorized agents for retail sales. At all relevant times, Defendants were the manufacturer, distributor, warrantor, and/or seller of the Affected Vehicles.

159.     Defendants knew or had reason to know of the specific use for which the Affected Vehicles were purchased.

160.     Because of the Start/Stop Defect, the Affected Vehicles were not in merchantable condition when sold and are not fit for the ordinary purpose of providing safe and reliable transportation.

161.     Defendants knew about the defect in the Affected Vehicles, allowing Defendants to cure their breach of warranty if they chose.

162.     Defendants' attempt to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because they knowingly sold a defective product without informing consumers about the defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiff and other Class members. Among other things, Plaintiff and other Class members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew of the defect at the time of sale.

163.     Plaintiff and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein. Affording Defendants a reasonable opportunity to cure the breach of written warranties therefore would be unnecessary and futile.

164.     Accordingly, Defendants are liable to Plaintiff and Class members for damages in an amount to be proven at trial.

## COUNT VI
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

165.     Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

166.     Plaintiff Pitts brings this claim on behalf of the Florida Subclass.

167.     Plaintiff and Class members entered into contracts with Defendants in connection with the sale of Affected Vehicles.

168.     Plaintiff and Class members gave fair and reasonable consideration and performed all their material obligations under the contracts.

169.     Implied in all contracts is a covenant of good faith and fair dealing, imposing a duty on the parties to act in good faith and deal fairly with one another.

170.     Plaintiff and Class members had a reasonable expectation that, when they purchased their Affected Vehicles from Defendants, the Affected Vehicles would be free of defects, especially defects that affected the safety and operability of the Affected Vehicles.

171.     Defendants used their discretion to place defective Start/Stop systems into Affected Vehicles without informing Plaintiff and Class members that the Defective Start/Stop systems would create a safety defect in the Affected Vehicles.

172.     Plaintiff and Class members had no reason to know Defendants had placed Defective Start/Stop systems into the Affected Vehicles.

173.     By creating and promoting an automobile with a latent safety defect, Defendants breached the covenant of good faith and fair dealing and breached their contractual duty to Plaintiff and Class members.

174.    As a direct and proximate result of Defendants' breach, Plaintiff and Class members suffered damages, including being induced to purchase the defective Affected Vehicles.

**COUNT VII**
**VIOLATIONS OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT**
**(FLA. STAT. §§ 501.201, *ET SEQ.*)**

175.    Plaintiff incorporates by reference all preceding allegations as though fully set forth herein.

176.    Plaintiff Pitts brings this Count on behalf of the Florida Subclass.

177..    Plaintiff and the members of the Florida Subclass are "consumers" within the meaning of Florida Unfair and Deceptive Trade Practices Act, FLA. STAT. § 501.203(7).

178..    Audi engaged in "trade or commerce" within the meaning of FLA. STAT. § 501.203(8).

179.    Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).  Audi participated in unfair and deceptive trade practices that violated the FUDTPA as described herein.

180.    In the course of Audi's business, it willfully failed to disclose and actively concealed that the Affected Vehicles contained the Start/Stop Defect as described above. Accordingly, Audi engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Affected Vehicles are of a particular standard and quality when they are not; advertising Affected Vehicles with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

- 54 -

181.    In the course of its business, Audi installed the defective Start/Stop System and concealed that it would turn the engine off too early and start the engine too late, causing the power steering and power brakes not to function while the car was still in motion and otherwise engaged in activities with a tendency or capacity to deceive.  Audi also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Affected Vehicles.

182.    Audi has known of its use of the defective Start/Stop system and that the system would cause premature engine shut-off and delayed engine start-up, but concealed all of that information from purchasers.

183.    Audi was also aware that it valued profits over its warranty obligations to repair the Start/Stop Defect, and that it was manufacturing, selling and distributing vehicles throughout the United States that contained a safety defect.  Audi concealed this information as well.

184.    By failing to disclose and by actively concealing the Start/Stop Defect, by marketing its vehicles as safe, dependable and of high quality, and by presenting itself as a reputable manufacturer that valued safety and durability, and stood behind its vehicles after they were sold, Audi engaged in deceptive business practices in violation of the FUDTPA.

185.    In the course of Audi's business, it willfully failed to disclose and actively concealed the defective Start/Stop system discussed above.  Audi compounded the deception by repeatedly asserting that the Affected Vehicles were safe, dependable and of high quality, and by claiming to be a reputable manufacturer that valued safety and dependability and stood behind its vehicles once they are on the road.

186.    Audi's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the safety and dependability of the Affected Vehicles, the quality of the Audi brand and the true value of the Affected Vehicles.

187.    Audi intentionally and knowingly misrepresented material facts regarding the Affected Vehicles with an intent to mislead Plaintiff and the Florida Subclass.

188.    Audi knew or should have known that its conduct violated the FUDTPA.

189.    As alleged above, Audi made material statements about the safety and durability of the Affected Vehicles and the Audi brand that were either false or misleading.

190.    Audi owed Plaintiff a duty to disclose the true safety and durability of the Affected Vehicles because Audi:

    a.    Possessed exclusive knowledge that it valued profits over safety, and that it was manufacturing, selling and distributing vehicles throughout the United States that contained a defective Start/Stop system;

    b.    Intentionally concealed the foregoing from Plaintiff; and/or

    c.    Made incomplete representations about the safety and durability of the Affected Vehicles, while purposefully withholding material facts from Plaintiff that contradicted these representations.

191.    Because Audi fraudulently concealed the Start/Stop Defect, the value of the Affected Vehicles has greatly diminished.  In light of the widespread complaints online and made to NHTSA, Affected Vehicles are now worth significantly less than they otherwise would be.

192.    Audi's concealment of the true characteristics of the Start/Stop system were material to Plaintiff and the Florida Subclass.  A vehicle known to be safe and dependable is worth more than an otherwise comparable vehicle about which there are numerous complaints relating to the safe operation of the Start/Stop system.

193.     Plaintiff and the Florida Subclass suffered ascertainable loss caused by Audi's misrepresentations and its concealment of and failure to disclose material information.  Class members who purchased the Affected Vehicles either would have paid less for their vehicles or would not have purchased or leased them at all.

194.     Audi had an ongoing duty to all Audi customers to refrain from unfair and deceptive acts or practices under the FUDTPA.  All owners of Affected Vehicles suffered ascertainable loss in the form of diminished value of their vehicles as a result of Audi's deceptive and unfair acts and practices made in the course of Audi's business.

195.     Audi's violations present a continuing risk to Plaintiff as well as to the general public.  Audi's unlawful acts and practices complained of herein affect the public interest.

196.     As a direct and proximate result of Audi's violations of the FUDTPA, Plaintiff Pitts and the Florida Subclass have suffered injury-in-fact and/or actual damage.

197.     Audi's actions as set forth above occurred in the conduct of trade or commerce.

198.     Plaintiff and the other Class members were injured as a result of Audi's conduct in that Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain, and their Affected Vehicles have suffered a diminution in value.  These injuries are the direct and natural consequence of Audi's misrepresentations and omissions.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of members of the Nationwide Class and State Subclass, respectfully requests that the Court enter judgment in their favor and against the Defendants, as follows:

A.      Certification of the proposed Nationwide Class and State Subclass, including appointment of Plaintiff' counsel as Class Counsel;

B.      Restitution, including at the election of Class members, recovery of the purchase price of their Affected Vehicles, or the overpayment or diminution in value of their Affected Vehicles;

C.      Damages, including punitive damages, costs, and disgorgement in an amount to be determined at trial, except that monetary relief under certain consumer protection statutes, as stated above, shall be limited prior to completion of the applicable notice requirements;

D.      An order requiring the Defendants to pay both pre- and post-judgment interest on any amounts awarded;

E.      An award of costs and attorneys' fees; and

F.      Such other or further relief as may be appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demand a jury trial for all claims so triable.


Dated: July 9, 2020                          Respectfully submitted,

                                             BAILEY & GLASSER, LLP

                           By      */s/ Gregory Y. Porter*_____
                                   Gregory Y. Porter (VASB # 40408)
                                   1055 Thomas Jefferson Street NW, Suite 540
                                   Washington, DC 20007
                                   Telephone: (202) 548-7790
                                   Facsimile: (202) 463-2103
                                   Email: gporter@baileyglasser.com

                                   Benjamin L. Bailey (to be admitted *pro hac vice*)
                                   Jonathan D. Boggs (to be admitted *pro hac vice*)
                                   BAILEY & GLASSER, LLP
                                   209 Capitol Street
                                   Charleston, WV 25301

Telephone: (304) 345-6555
Facsimile: (304) 342-1110
Email: bbailey@baileyglasser.com
Email: jboggs@baileyglasser.com


Steve W. Berman (to be admitted *pro hac vice*)
Thomas E. Loeser (to be admitted *pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
Email: steve@hbsslaw.com
Email: toml@hbsslaw.com

*Attorneys for Plaintiff and the Proposed Class*